**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

ESTEBAN ALEMAN GONZALEZ;
EDUARDO GUTIERREZ SANCHEZ,
*Plaintiffs-Appellees*,

v.

WILLIAM P. BARR, Attorney General;
CHAD WOLF, Acting Secretary,
Department of Homeland Security;
JAMES MCHENRY, Director,
Executive Office for Immigration
Review, Department of Justice;
CHRISTOPHER A. SANTORO, Acting
Chief Immigration Judge, Executive
Office for Immigration Review,
Department of Justice; DAVID W.
JENNINGS, Field Office Director for
the San Francisco Field Office of
U.S. Immigration and Customs
Enforcement, Department of
Homeland Security; DAVID O.
LIVINGSTON, Sheriff, Contra Costa
County; KRISTI BUTTERFIELD,
Facility Commander, West County

No. 18-16465

D.C. No.
3:18-cv-01869-
JSC

OPINION

Detention Facility, Contra Costa
County,[*]

*Defendants-Appellants.*


Appeal from the United States District Court
for the Northern District of California
Jacqueline Scott Corley, Magistrate Judge, Presiding

Argued and Submitted November 13, 2019
Pasadena, California

Filed April 7, 2020

Before:  FERDINAND F. FERNANDEZ, MILAN D.
SMITH, JR., and ERIC D. MILLER, Circuit Judges.

Opinion by Judge Milan D. Smith, Jr.;
Dissent by Judge Fernandez

---

[*] Pursuant to Federal Rule of Appellate Procedure 43(c)(2), Chad Wolf is automatically substituted as the Acting Secretary of the U.S. Department of Homeland Security and Christopher A. Santoro is automatically substituted as the Acting Chief Immigration Judge of the Executive Office for Immigration Review.

# SUMMARY[**]

## Immigration

In an action where Plaintiffs—who represent a certified class of aliens who are subject to final orders of removal and are detained pursuant to 8 U.S.C. § 1231(a)(6) within the Ninth Circuit—challenged their prolonged detention without an individualized bond hearing, the panel affirmed the district court's preliminary injunction requiring the Government to provide each class member detained for six months or longer with a bond hearing before an immigration judge where the burden is on the Government to justify continued detention.

Class members are detained under 8 U.S.C. § 1231(a)(6), which authorizes the Government to detain aliens subject to final orders of removal, or reinstated final orders of removal. The class includes only § 1231(a)(6) detainees who have "live claims" of defense against removal before an IJ, the Board of Immigration Appeals, or a circuit court of appeals, such as withholding-only claims, and the class excludes aliens whose release or removal is imminent, as well as aliens who are members of certified classes in other litigations pending in the Ninth Circuit.

In *Zadvydas v. Davis*, 533 U.S. 678 (2001), the Supreme Court applied the canon of constitutional avoidance to § 1231(a)(6) and held that six months was a presumptively reasonable length of detention and that, after that period, once an alien provides good reason to believe there is no

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

significant likelihood of removal in the reasonably foreseeable future, the Government must provide evidence to rebut that showing. In *Diouf v. Napolitano*, 634 F.3d 1081 (9th Cir. 2011) (*Diouf II*), a three-judge panel of this court applied the canon to construe § 1231(a)(6) as requiring an individualized bond hearing before an IJ for an alien detained for six months or longer when the alien's release or removal is not imminent.

In this case, the district court issued an injunction requiring the Government to provide class members with hearings after six months of detention, as required by *Diouf II*. Following this court's decision in *Singh v. Holder*, 638 F.3d 1196 (9th Cir. 2011), which held that due process requires the government to bear the burden of proof in bond hearings, the injunction also requires the Government to bear the burden to justify an alien's continued detention in the required hearings. On appeal, the Government asserted only that the district court erred by concluding that Plaintiffs are likely to succeed on the merits of their statutory claims; it did not challenge the district court's decision on the other preliminary injunction factors.

The panel held that Plaintiffs are likely to succeed on the merits of their claim that § 1231(a)(6) requires the Government to provide class members with an individualized bond hearing in accordance with *Diouf II*. In so holding, the panel concluded that *Diouf II* is not clearly irreconcilable with *Jennings v. Rodriguez*, 138 S. Ct. 830 (2018), in which the Supreme Court rejected this court's application of the canon of constitutional avoidance to construe different immigration detention statutes. In *Jennings*, the Supreme Court explained that the canon comes into play only when a statute is found to be susceptible to more than one construction, and criticized this court for

adopting implausible constructions 8 U.S.C. §§ 1225(b), 1226(a), and 1226(c) to hold that detained aliens have a statutory right to periodic bond hearings at six months under those provisions. The panel recognized some tension between *Diouf II* and *Jennings* but concluded that the decisions are not so fundamentally inconsistent that the court could no longer apply *Diouf II* in light of the high standard for showing clear irreconcilability. The panel underscored that *Jennings* repeatedly limited its analysis to the statutory provisions at issue there, and *Jennings*'s reasoning showed that there are material textual differences between § 1231(a)(6) and the other immigration detention statutes. Further, the panel concluded that because *Jennings* did not invalidate this court's constitutional due process holding in *Singh*, the district court properly required the Government to bear a clear and convincing burden of proof at such bond hearings.

Rejecting the Government's argument that *Diouf II*'s mode of applying the canon contravened *Jennings*, the panel explained that *Diouf II* and *Jennings* relied on the same principles governing application of the canon. The panel also rejected the Government's argument that *Diouf II* improperly "inserted" a bond hearing requirement in contravention of *Jennings*, reasoning that *Diouf II* relied on earlier circuit precedent that construed § 1231(a)(6) to permit release on bond without reliance on the canon. The panel also rejected the Government's argument that the Supreme Court's treatment of § 1226(a) in *Jennings* undercut *Diouf II*, explaining that the Court rejected the imposition of a six-month bond hearing requirement for § 1226(a) but that the Court did not find that the government's regulations providing for an initial bond hearing for § 1226(a) detainees contravened the statutory text. The panel further reasoned that, unlike any of the

detention statutes at issue in *Jennings*, *Zadvydas* and *Jennings*'s discussion of that decision support the conclusion that *Diouf II* is not clearly irreconcilable with *Jennings*. The panel found additional support for the conclusion that *Diouf II* is not clearly irreconcilable with *Jennings* in the Third Circuit's decision in *Guerrero-Sanchez v. Warden York County Prison*, 905 F.3d 208 (3d Cir. 2018), which expressly adopted *Diouf II*'s construction of § 1231(a)(6) in the wake of *Jennings*.

Finally, the panel rejected the Government's contention that the Supreme Court already applied the canon to § 1231(a)(6) to prohibit indefinite detention in *Zadvydas*, and therefore, the district court could not "re-apply" the canon. Likewise, the panel rejected the Government's argument that *Clark v. Martinez*, 543 U.S. 371 (2005), stands for the proposition that courts can apply *only Zadvydas*'s construction of § 1231(a)(6) in all cases, and therefore, the district court erroneously departed from the framework *Zadvydas* established for federal habeas courts.

Dissenting, Judge Fernandez stated that *Jennings* is clearly irreconcilable with *Diouf II*'s reasoning, writing that the court in *Diouf II* did not identify a textual ambiguity in the statute regarding a bond hearing requirement and did not identify any plausible basis in the statutory text for requiring such a hearing. Judge Fernandez also wrote that *Diouf II*'s reasoning that § 1231(a)(6) detainees were entitled to individualized bond hearings simply because this court had conjured such hearings for § 1226(a) detainees is clearly irreconcilable with *Jennings*.

**COUNSEL**

Matthew P. Seamon (argued), Cara E. Alsterberg, and Mary L. Larakers, Trial Attorneys; T. Monique Peoples, Senior Litigation Counsel; Elianis N. Perez, Assistant Director; William C. Peachey, Director; Joseph H. Hunt, Assistant Attorney General; Office of Immigration Litigation, United States Department of Justice, Washington, D.C.; for Defendants-Appellants.

Michael Kaufman (argued), American Civil Liberties Union Foundation of Southern California, Los Angeles, California; Alison Pennington, Lisa Knox, and Jesse Newmark, Centro Legal de la Raza, Oakland, California; Marc Van Der Hout, Judah Lakin, and Amalia Wille, Van Der Hout LLP, San Francisco, California; Matthew H. Green, Law Offices of Matthew H. Green, Tucson, Arizona; Vasudha Talla, American Civil Liberties Union Foundation of Northern California, San Francisco, California; Bardis Vakili, American Civil Liberties Union Foundation of San Diego and Imperial Counties, San Diego, California; for Plaintiffs-Appellees.

**OPINION**

M. SMITH, Circuit Judge:

Esteban Aleman Gonzalez and Eduardo Gutierrez Sanchez (Plaintiffs) represent a certified class of individuals who are subject to final removal orders and are detained pursuant to 8 U.S.C. § 1231(a)(6), within our court's jurisdiction for six months or more, and who have been or will be denied an individualized bond hearing before an immigration judge (IJ).

Section 1231(a)(6) authorizes Defendants-Appellants (hereinafter, the Government[1]) to detain aliens subject to final removal orders, or reinstated final removal orders. In *Diouf v. Napolitano*, 634 F.3d 1081 (9th Cir. 2011) (*Diouf II*), a three-judge panel of our court applied the canon of constitutional avoidance to construe § 1231(a)(6) as requiring an individualized bond hearing before an IJ for an alien detained for six months or longer when the alien's release or removal is not imminent. *Id.* at 1086, 1091–92 & n.13. In this case, Plaintiffs sought a preliminary injunction requiring the Government to provide class members with an

---

[1] We use the term "the Government" to refer collectively to the following Defendants-Respondents who Plaintiffs sued in their official capacities, including as substituted: (1) William P. Barr, United States Attorney General, (2) Chad Wolf, Acting Secretary of the U.S. Department of Homeland Security, (3) James McHenry, Director of the Executive Office for Immigration Review (EOIR), (4) Christopher A. Santoro, Acting Chief Immigration Judge, EOIR, (5) David W. Jennings, Field Office Director for the San Francisco Field Office of U.S. Immigration and Customs Enforcement (ICE), (6) David O. Livingston, Contra Costa County Sheriff, and (7) Kristi Butterfield, Facility Commander, West County Detention Facility, Contra Costa County. Our use of the uncapitalized term "the government" should not be construed as a reference to the Defendants-Respondents.

individualized bond hearing in accordance with *Diouf II*. Relying on our court's decision in *Singh v. Holder*, 638 F.3d 1196 (9th Cir. 2011), Plaintiffs also sought for the Government to bear the burden of proof at such a hearing. Concluding that it remained bound by *Diouf II*, the district court granted the preliminary injunction. The Government appeals, urging us to reverse and vacate.

We must decide whether Plaintiffs are likely to succeed on the merits of their claim that § 1231(a)(6) requires the Government to provide class members with an individualized bond hearing. As it argued unsuccessfully to the district court, the Government principally argues that *Diouf II* is clearly irreconcilable with the Supreme Court's decision in *Jennings v. Rodriguez*, 138 S. Ct. 830 (2018), a decision that rejected our court's application of the canon of constitutional avoidance to construe different immigration detention statutes. Despite the district court's reliance on our decision in *Diouf II*, the Government further argues that the district court impermissibly "re-applied" the canon to § 1231(a)(6) to grant the preliminary injunction. According to the Government, *Clark v. Martinez*, 543 U.S. 371 (2005), establishes that the Court's construction of § 1231(a)(6) in *Zadvydas v. Davis*, 533 U.S. 678 (2001), is the single permissible application of the canon to the provision.

The threshold issue we must resolve is whether *Diouf II* is clearly irreconcilable with *Jennings*. As a three-judge panel, we are bound by the prior decision of another three-judge panel. *Miller v. Gammie*, 335 F.3d 889, 893, 899–900 (9th Cir. 2003) (en banc). This rule gives way when, but only when, the earlier decision is clearly irreconcilable with the holding or reasoning of intervening authority from our court sitting en banc or the Supreme Court. *Id.* at 893, 899–900. "The 'clearly irreconcilable' requirement is 'a high

standard.'" *United States v. Robertson*, 875 F.3d 1281, 1291 (9th Cir. 2017) (quoting *Rodriguez v. AT & T Mobility Servs. LLC*, 728 F.3d 975, 979 (9th Cir. 2013)). "[I]f we can apply our precedent consistently with that of the higher authority, we *must* do so." *FTC v. Consumer Def., LLC*, 926 F.3d 1208, 1213 (9th Cir. 2019) (emphasis added).

We hold that Plaintiffs are likely to succeed on the merits of their § 1231(a)(6) statutory claim. Although we recognize some tension between *Diouf II* and *Jennings*, we cannot conclude that the decisions are so fundamentally inconsistent that we can no longer apply *Diouf II* without running afoul of *Jennings*. We thus conclude that we remain bound by *Diouf II*. For that reason, we conclude further that the district court did not err in relying on *Diouf II*'s construction of § 1231(a)(6) to require a bond hearing before an IJ after six months of detention for an alien whose release or removal is not imminent. Because *Jennings* did not invalidate our constitutional due process holding in *Singh*, the district court also properly required the Government to bear a clear and convincing burden of proof at such a bond hearing to justify an alien's continued detention. Our conclusion that *Diouf II* remains controlling compels us to reject the Government's remaining challenges that effectively seek to relitigate *Diouf II*. We conclude further that the preliminary injunction complies with a proper reading of *Clark*. Based on these determinations, we affirm the district court's preliminary injunction in full.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.  Statutory Framework

Various provisions of the Immigration and Nationality Act (INA) authorize the government to detain noncitizens during immigration proceedings. *See* 8 U.S.C. §§ 1225(b),

1226(a), 1226(c), and 1231(a).  These statutes are different textually and in their application.  "[T]hese statutes apply at different stages of an alien's detention." *Diouf v. Mukasey*, 542 F.3d 1222, 1228 (9th Cir. 2008) (*Diouf I*).  "Where an alien falls within this statutory scheme can affect whether his detention is mandatory or discretionary, as well as the kind of review process available to him if he wishes to contest the necessity of his detention."  *Prieto-Romero v. Clark*, 534 F.3d 1053, 1057 (9th Cir. 2008).

Section 1225(b)(1) and (b)(2) authorize the government "to detain certain aliens seeking admission into the country[.]"  *Jennings*, 138 S. Ct. at 838.  Pursuant to §§ 1226(a) and (c), the government has the authority to detain "aliens already in the country pending the outcome of removal proceedings."  *Id.*  Section 1231(a), the detention provision at issue in this case, "authorizes the detention of aliens who have already been ordered removed from the country."  *Id.* at 843.

Pursuant to § 1231(a), the Attorney General "shall remove the alien from the United States within a period of 90 days" when an alien is ordered removed.  8 U.S.C. § 1231(a)(1)(A).  "During the removal period, the Attorney General shall detain the alien."  8 U.S.C. § 1231(a)(2).  "If the alien does not leave or is not removed during the removal period, the alien . . . shall be subject to supervision under regulations" set by the Attorney General pending removal. *Id.* § 1231(a)(3).  Section 1231(a)(6) further provides that "certain categories of aliens who have been ordered removed, namely, inadmissible aliens, criminal aliens, aliens who have violated their nonimmigrant status conditions, and aliens removable for certain national security or foreign relations reasons, as well as any alien 'who has been determined by the Attorney General to be a risk to the

community or unlikely to comply with the order of removal,'" *Zadvydas*, 533 U.S. at 688, "*may be detained beyond the removal period and*, *if released, shall be subject to the terms of supervision in paragraph (3)*," 8 U.S.C. § 1231(a)(6) (emphasis added).

In this circuit, detention pursuant to § 1231(a)(6) "encompasses aliens . . . whose collateral challenge to [a] removal order (or a motion to reopen) is pending in the court of appeals, as well as to aliens who have exhausted all direct and collateral review of their removal orders but who, for one reason or another, have not yet been removed from the United States." *Diouf II*, 634 F.3d 1085; *see also Diouf I*, 542 F.3d at 1230 (explaining that the removal period in § 1231(a)(1) will commence even if a stay of removal is entered while a federal court reviews an alien's habeas petition pursuant to 28 U.S.C. § 2241 or considers a petition for review of a denial by the Board of Immigration Appeals of an alien's motion to reopen).

The INA also authorizes the government to reinstate a prior removal order against an alien who the government believes has unlawfully reentered the United States, with the order "reinstated from its original date." 8 U.S.C. § 1231(a)(5). Aliens with reinstated removal orders may pursue limited forms of relief from removal, including withholding of removal and protection pursuant to the Convention Against Torture. *Andrade-Garcia v. Lynch*, 828 F.3d 829, 831 (9th Cir. 2016). In this circuit, aliens with reinstated removal orders, including those who pursue these limited forms of relief, are treated as detained pursuant to § 1231(a)(6). *Padilla-Ramirez v. Bible*, 862 F.3d 881, 884–87 (9th Cir. 2017), *amended by*, 882 F.3d 826, 830–33 (9th Cir. 2018).

## II.  The Proceedings in this Case

Plaintiffs Aleman Gonzalez and Gutierrez Sanchez are natives and citizens of Mexico.  The Government reinstated prior removal orders against them in 2017 but placed each in withholding-only removal proceedings after asylum officers determined that each has a reasonable fear of persecution or torture in Mexico.  Both Plaintiffs requested a bond hearing before an IJ after 180 days in detention.  Different IJs, however, denied the requests by reasoning that *Jennings* effectively overruled *Diouf II* and thus deprived the IJs of jurisdiction to conduct the bond hearing *Diouf II* would require.  Plaintiffs filed the complaint and petition for a writ of habeas corpus on behalf of a putative class of similarly situated individuals detained in our court's jurisdiction.

In their complaint-petition, Plaintiffs claim that the bond hearing denials violate the INA, the Administrative Procedure Act, and the U.S. Constitution's Fifth Amendment Due Process Clause.  Plaintiffs rely on *Diouf II* to allege that Defendants have denied them bond hearings "[d]espite clear Ninth Circuit precedent establishing the right to a bond hearing for Plaintiffs upon their detention becoming prolonged" as aliens detained pursuant to § 1231(a)(6).  Plaintiffs further allege that *Singh* requires the Government to bear a clear and convincing evidentiary burden of proof at such a bond hearing.  Alternatively, Plaintiffs claim that constitutional due process requires these protections.

Plaintiffs moved for class certification on their statutory and constitutional claims, and a preliminary injunction.  The district court certified a class of § 1231(a)(6) detainees in the

Ninth Circuit for the statutory claims only.**[2]**  The court also granted the preliminary injunction, concluding that all preliminary injunction factors weighed in Plaintiffs' favor. The court enjoined the Government from "detaining Plaintiffs and the class members pursuant to [§] 1231(a)(6) for more than 180 days without providing each a bond hearing before an IJ as required by *Diouf II*."  At the Government's request, the district court subsequently clarified that the certified class includes only individuals detained pursuant to § 1231(a)(6) who have "live claims" before an immigration court, the BIA, or a circuit court of appeals, which means defenses against their removal from the United States.  The court further clarified that, pursuant to *Diouf II*, the preliminary injunction does not require a bond hearing for an alien whose release or removal is imminent.  *Diouf II*, 634 F.3d at 1092 n.13.  Subject to these clarifications, the Government timely appealed.

## JURISDICTION AND STANDARD OF REVIEW

We have jurisdiction over an appeal from the grant of a preliminary injunction pursuant to 28 U.S.C. § 1292(a)(1). We review the grant of a preliminary injunction motion for an abuse of discretion.  *Adidas Am., Inc. v. Skechers USA, Inc.*, 890 F.3d 747, 753 (9th Cir. 2018).  "[A] district court abuses its discretion when it makes an error of law." *Cuviello v. City of Vallejo*, 944 F.3d 816, 826 (9th Cir. 2019) (citation omitted).

---

**[2]** Plaintiffs' class certification motion excluded aliens detained pursuant to § 1231(a)(6) who are members of certified classes in litigations pending in the Central District of California and the Western District of Washington.

## ANALYSIS

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Although the district court determined that all preliminary injunction factors weighed in Plaintiffs' favor, the Government asserts only that the district court erred by concluding that Plaintiffs are likely to succeed on the merits of the statutory claims. We therefore limit our analysis to this factor.

The dispositive issue for Plaintiffs' likelihood of success on their § 1231(a)(6) statutory claims is whether, as the Government contends, *Diouf II* is clearly irreconcilable with *Jennings*. If the Government's contention is correct, then *Diouf II* cannot support the preliminary injunction the district court granted.

Familiar principles guide our consideration of the Government's principal challenge to the preliminary injunction. In this circuit, a decision of a prior three-judge panel is controlling unless and until a superseding ruling comes from higher authority, including the Supreme Court or a panel of our court sitting en banc. *Miller*, 335 F.3d at 893, 899–900. "[T]he issues decided by the higher court need not be identical in order to be controlling. Rather, the relevant court of last resort must have undercut the theory or reasoning underlying the prior circuit precedent in such a way that the cases are clearly irreconcilable." *Id.* at 900. In cases of "clear irreconcilability," we "should consider [our]selves bound by the intervening higher authority and

reject the prior opinion of this court as having been effectively overruled." *Id.*

As we have already emphasized, "[t]he 'clearly irreconcilable' requirement is 'a high standard.'" *Robertson*, 875 F.3d at 1291 (citation omitted). "It is not enough for there to be 'some tension' between the intervening higher authority and prior circuit precedent, or for the intervening higher authority to 'cast doubt' on the prior circuit precedent." *Lair v. Bullock*, 697 F.3d 1200, 1207 (9th Cir. 2012) (internal citation omitted) (quoting *United States v. Orm Hieng*, 679 F.3d 1131, 1140–41 (9th Cir. 2012), and *United States v. Delgado-Ramos*, 635 F.3d 1237, 1239 (9th Cir. 2011) (per curiam)). "In order for us to ignore existing Ninth Circuit precedent . . . the reasoning and principles of [the later authority] would need to be so fundamentally inconsistent with our prior cases that our prior cases cannot stand." *In re Gilman*, 887 F.3d 956, 962 (9th Cir. 2018) (alteration in brackets added). But if we "can apply our prior circuit precedent without running afoul of the intervening authority, we must do so." *Lair*, 697 F.3d at 1207 (internal quotations and citation omitted).

To set the stage for our analysis of whether *Diouf II* is clearly irreconcilable with *Jennings*, we first discuss the relevant precedents of the Supreme Court and our court construing the immigration detention statutes. We then consider the Government's particular arguments about how, in its view, *Jennings* undercuts *Diouf II*. Finally, we address the Government's argument that the district court improperly re-applied the canon of constitutional avoidance to § 1231(a)(6).

## I.  Constructions of the Immigration Detention Statutes

### A.  *Zadvydas v. Davis*, 533 U.S. 678 (2001)

We turn first to the Supreme Court's decision in *Zadvydas v. Davis*, 533 U.S. 678 (2001).  *Zadvydas* is central to understanding our court's application of the canon of constitutional avoidance to all the immigration detention statutes, as well as to understanding the Court's decision in *Jennings*.

In *Zadvydas*, the Court considered a federal habeas challenge to detention pursuant to § 1231(a)(6) brought by aliens with criminal convictions whom the government had detained beyond § 1231(a)(2)'s initial 90-day mandatory detention period.  533 U.S. at 682.  The question before the Court was whether, beyond the initial removal period, § 1231(a)(6) authorized indefinite detention or only detention for a period reasonably necessary to secure the alien's removal.  *Id.*

Invoking the canon of constitutional avoidance, the Court rejected the government's argument that § 1231(a)(6) sets no limit on the permissible length of detention beyond the removal period.  *Id.* at 689.  The Court reasoned first that "[a] statute permitting indefinite detention of an alien would raise a serious constitutional problem" under the Fifth Amendment's Due Process Clause given the physical liberty at issue, the potentially permanent civil confinement the statute could authorize, and the limited "procedural protections available to the alien" pursuant to 8 C.F.R. § 241.4(d)(1) (2001), pursuant to which "the alien bears the burden of proving he is not dangerous[.]"  *Id.* at 690–92.  Against the backdrop of these constitutional concerns, the Court could not find in § 1231(a)(6)'s text a "clear indication of congressional intent to grant the Attorney General the

power to hold indefinitely an alien ordered removed." *Id*. at 697. The Court explained that the statute's use of the word "may" in the phrase "may be detained" is ambiguous and "does not necessarily suggest unlimited discretion." *Id*. The Court thus "read an implicit limitation into" § 1231(a)(6), "limit[ing] an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States." *Id*. at 689.

Faced with the habeas petitions in that case, the Court outlined how a habeas court should apply this construction of § 1231(a)(6). *Id.* at 699. When removal is no longer reasonably foreseeable, § 1231(a)(6) no longer authorizes continued detention. *Id.* at 699−700. "In that case, . . . the alien's release may and should be conditioned on any of the various forms of supervised release that are appropriate in the circumstances, and the alien may no doubt be returned to custody upon a violation of those conditions." *Id.* at 700 (citing 8 U.S.C. §§ 1231(a)(3); 8 C.F.R. § 241.5)). "[H]av[ing] reason to believe . . .that Congress previously doubted the constitutionality of detention for more than six months," the Court recognized six months as a presumptively reasonable length of detention "for the sake of uniform administration in the federal courts." *Id.* at 701. "After this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id*. The Court qualified that this "does not mean that every alien not removed must be released after six months," but rather "an alien may be [detained] until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.*

## B. This Court's Pre-*Jennings* Constructions of the Immigration Detention Statutes

Although *Zadvydas* concerned only § 1231(a)(6), that decision led this court to "grapple[] in piece-meal fashion with whether the various immigration detention statutes may authorize indefinite or prolonged detention of detainees and, if so, may do so without providing a bond hearing." *Rodriguez v. Robbins*, 804 F.3d 1060, 1077 (9th Cir. 2015) (*Rodriguez III*) (quoting *Rodriguez v. Robbins*, 715 F.3d 1127, 1134 (9th Cir. 2013) (*Rodriguez II*) (further quoting *Rodriguez v. Hayes*, 591 F.3d 1105, 1114 (9th Cir. 2010) (*Rodriguez I*))).[3] Five decisions are relevant here.

First, in *Casas-Castrillon v. Department of Homeland Security*, 535 F.3d 942 (9th Cir. 2008), our court considered a habeas petition from a lawful permanent resident whom the government had detained for nearly seven years without providing an adequate opportunity to challenge his detention. *Id.* at 944. We recognized that § 1226(a)

---

[3] Our court also identified the Court's decision in *Demore v. Kim*, 538 U.S. 510 (2003), as important to our constructions of the immigration detention statutes to address the constitutional issue of prolonged detention. *See Rodriguez III*, 804 F.3d at 1077. *Demore*, however, is the earliest example of the Court's rejection of our court's reliance on *Zadvydas* to construe the other immigration detention statutes. We had construed § 1226(c) to require the government to provide a bail hearing with reasonable promptness to determine whether the alien was a flight risk or a danger to the community. *Kim v. Ziglar*, 276 F.3d 523, 539 (9th Cir. 2002). Foreshadowing its reasoning in *Jennings*, the Court rejected that construction by distinguishing *Zadvydas*'s focus on § 1231(a)(6) as "materially different" from § 1226(c), noting that whereas the statute at issue in *Zadvydas* involved "'indefinite' and 'potentially permanent' detention," § 1226(c) involved detention "of a much shorter duration" with a "definite termination point." *Demore*, 538 U.S. at 527–29.

authorized the government to detain Casas-Castrillon because he remained capable of being removed, *id.* at 948–49, but we also recognized that Casas-Castrillon's nearly seven-year detention posed a "constitutional question," *id.* at 950. We declined to resolve that question because we could "find no evidence that Congress intended to authorize the long-term detention of aliens such as Casas[-Castrillon] without providing them access to a bond hearing before an immigration judge." *Id.*

Relying on an earlier decision of our court that applied the canon of constitutional avoidance to § 1226(c), we determined that prolonged detention under § 1226(a) is "permissible only where the Attorney General finds such detention individually necessary by providing the alien with an adequate opportunity to contest the necessity of his detention." *Id.* at 951 (relying on *Tijani v. Willis*, 430 F.3d 1241, 1242 (9th Cir. 2005)).**[4]** We recognized that "[§] 1226(a), unlike § 1226(c), provides such authority for the Attorney General to conduct a bond hearing and release the alien on bond or detain him if necessary to secure his presence at removal." *Id*. We held that "§ 1226(a) must be construed as *requiring* the Attorney General to provide the alien with such a hearing" given the constitutional

---

**[4]** In *Tijani*, our court addressed the government's detention of an alien for two years and eight months pursuant to § 1226(c). 430 F.3d at 1242. We invoked *Zadvydas* to question the permissibility of a congressional statute authorizing detention "of this duration for lawfully admitted resident aliens who are subject to removal." *Id.* (citing *Zadvydas*, 533 U.S. at 690). We distinguished *Demore* as a case "where the alien conceded deportability," and then proceeded to apply the canon of constitutional avoidance to construe § 1226(c) to conditionally grant habeas relief unless the government provided the alien with a bond hearing before an IJ where the government bore the burden of justifying continued detention. *Id.*

doubtfulness of prolonged detention without an individualized determination of dangerousness or flight risk. *Id.* (citing *Tijani*, 430 F.3d at 1242) (emphasis in original). "Thus an alien is entitled to be released on bond unless the 'government establishes that he is a flight risk or will be a danger to the community.'" *Id.* (quoting *Tijani*, 430 F.3d at 1242).

Second, in *Diouf II*, we reversed a district court's denial of a preliminary injunction that would have required individualized bond hearings pursuant to § 1231(a)(6). 634 F.3d at 1084. We "extend[ed] *Casas-Castrillon*" to § 1231(a)(6), *id.* at 1086, such that "individuals detained [there]under . . . are entitled to the same procedural safeguards against prolonged detention as individuals detained under § 1226(a)," *id.* at 1084. We determined that "prolonged detention under § 1231(a)(6), without adequate procedural safeguards, would raise 'serious constitutional concerns.'" *Id.* at 1086 (quoting *Casas-Castrillon*, 535 F.3d at 950). We thus "appl[ied] the canon . . . and construe[d] § 1231(a)(6) as requiring an individualized bond hearing, before an immigration judge, for aliens facing prolonged detention under that provision." *Id.* (quoting *Casas-Castrillon*, 535 F.3d at 951). We held further that "[s]uch aliens are entitled to release on bond unless the government establishes that the alien is a flight risk or will be a danger to the community." *Id.*

In justifying this application of the canon to § 1231(a)(6) to require a bond hearing, we rejected the government's argument that § 1231(a)(6)'s text does not expressly provide for release on bond as does § 1226(a)'s text. We underscored that we had already construed § 1231(a)(6) to authorize release on bond and acknowledged that the government's own regulations permitted release on bond for

aliens detained pursuant to the provision. *Id.* at 1089 (citing *Diouf I*, 542 F.3d at 1234; 8 C.F.R. § 241.5(b)).

We also rejected the government's argument that the regulations it modified in the wake of the Court's construction of § 1231(a)(6) in *Zadvydas* provided sufficient safeguards to protect the liberty interests of § 1231(a)(6) detainees. *Id.* at 1089 & n.10. We found "serious constitutional concerns" with the government's 180-day review process (*i.e.*, detention lasting six months) because the regulations "do not provide for an in-person hearing, they place the burden on the alien rather than the government and they do not provide for a decision by a neutral arbiter such as an immigration judge." *Id.* at 1091. In the context of this discussion, we explained for the first time that "[a]s a general matter, detention is prolonged when it has lasted six months and is expected to continue more than minimally beyond six months." *Id.* at 1092 n.13; *see also Rodriguez III*, 804 F.3d at 1069 ("In *Diouf II*, we also adopted a definition of 'prolonged' detention . . . for purposes of administering the *Casas*[-*Castrillon*] bond hearing requirement." (citing *Diouf II*, 634 F.3d at 1092 n.13)). Alluding to *Zadvydas*, we explained that the "private interests at stake are profound" at six months of detention, such that "a hearing before an immigration judge is a basic safeguard for aliens facing prolonged detention under § 1231(a)(6)." *Diouf II*, 634 F.3d at 1091–92.

Third, and not long after *Diouf II*, we explained in *Singh* that "given the substantial liberty interests at stake," 638 F.3d at 1200, due process requires the government to prove "by clear and convincing evidence that an alien is a flight risk or a danger to the community to justify the denial of bond," *id.* at 1203–04. Although *Singh* concerned a bond hearing requirement that our court construed § 1226(a) as

requiring in *Casas-Castrillon*, *Singh* was not a statutory construction decision.  Instead, we drew from the Supreme Court's constitutional procedural due process jurisprudence "plac[ing] a heightened burden of proof on the State in civil proceedings in which the 'individual liberty interests at stake . . . are both particularly important and more substantial than mere loss of money.'"  *Id.* at 1204 (quoting *Cooper v. Oklahoma*, 517 U.S. 348, 363 (1996), and citing *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992); *Woodby v. INS*, 385 U.S. 276, 285 (1966); *Chaunt v. United States*, 364 U.S. 350, 353 (1960)).

Fourth, in *Rodriguez II*, we affirmed a district court's preliminary injunction that required the government to provide individualized bond hearings before an IJ to class members detained pursuant to §§ 1225(b) and 1226(c).  *Rodriguez II*, 715 F.3d at 1130–31.  To avoid the constitutional concerns posed by prolonged detention, we held that "§ 1226(c)'s mandatory language must be construed 'to contain an implicit 'reasonable time' limitation, . . . subject to federal court review.'"  *Id*. at 1138 (quoting *Zadvydas*, 533 U.S. at 682).  After the expiration of that implicit time limitation, the government's authority to detain class members would shift to § 1226(a).  *Id.* (citing *Casas-Castrillon*, 535 F.3d at 948).  Relying on *Diouf II*'s definition of prolonged detention, we held that "subclass members who have been detained under § 1226(c) for six months are entitled to a bond hearing[.]"  *Id.* (citing *Diouf II*, 634 F.3d at 1092 n.13).  We acknowledged the government's argument there that "*Diouf II* by its terms addressed detention under § 1231(a)(6), not § 1226(c) or § 1225(b)," but we thought the conclusion "that detention always becomes prolonged at six months" was "consistent with the reasoning of *Zadvydas*, *Demore*, *Casas*[-*Castrillon*], and *Diouf II*[.]"  *Id.* at 1039.  Finding "no basis" to distinguish

§ 1225(b) from § 1226(c), we also held that any mandatory detention pursuant to § 1225(b) was "implicitly time-limited" to six months, after which the government's authority shifted to § 1226(a). *Id.* at 1143–44. The § 1225(b) subclass would thus be entitled to a bond hearing in accordance with *Casas-Castrillon*'s construction of § 1226(a). *Id*. (citing *Casas-Castrillon*, 535 F.3d at 948). *Singh*'s strictures would apply to the §§ 1225(b) and 1226(c) subclasses. *Id.* at 1139, 1144.

Finally, *Rodriguez III*—the decision at issue in *Jennings*—largely distilled the holdings of our decisions construing the immigration detention statutes into a single decision. There, we considered a grant of summary judgment and corresponding permanent injunction for a class of noncitizens who challenged their prolonged detention pursuant to §§ 1225(b), 1226(a), 1226(c), and 1231(a) without individualized bond hearings to justify continued detention. *Rodriguez III*, 804 F.3d at 1065. We reversed the judgment and injunction insofar as they concerned noncitizens detained pursuant to § 1231(a), explaining that the class was defined as non-citizens "detained 'pending completion of removal proceedings, including judicial review.'" *Id.* at 1086. We explained that a removal order could not be administratively final for any class members, and thus "[s]imply put, the § 1231(a) subclass does not exist." *Id*. We otherwise affirmed the judgment and injunction.

In *Rodriguez III*, we concluded that "the canon of constitutional avoidance requires us to construe the statutory scheme to provide all class members who are in prolonged detention with bond hearings at which the government bears the burden of proving by clear and convincing evidence that the class member is a danger to the community or a flight

risk." *Id*. at 1074. For the §§ 1225(b) and 1226(c) subclasses, we reiterated our application of the canon in *Rodriguez II* to construe the provisions as containing an implicit six-month time limitation, after which the government's detention authority shifted to § 1226(a), thereby entitling detainees to a bond hearing in accordance with *Casas-Castrillon*. *Id.* at 1079−81 (discussing § 1226(c)), *id.* at 1081−84 (discussing § 1225(b)). We affirmed the injunction for the § 1226(a) subclass as "squarely controlled by our precedents," pointing principally to *Casas-Castrillon*. *Id*. at 1085. Such class members were "entitled to automatic bond hearings after six months of detention." *Id.*

We also addressed procedural protections for the statutory bond hearings we construed § 1226(a) as requiring, and to which all class members were entitled based on our constructions of the immigration statutes at issue. Relying on *Singh*, we affirmed the requirement that the government justify continued detention by clear and convincing evidence. *Id.* at 1087. We also determined, for the first time, that "the government must provide periodic bond hearings every six months" after an initial bond hearing "so that noncitizens may challenge their continued detention as 'the period of . . . confinement grows.'" *Id.* at 1089 (quoting *Diouf II*, 634 F.3d at 1091, which in turn quoted *Zadvydas*, 533 U.S. at 701). The government petitioned for a writ of certiorari, which the Supreme Court granted. *Jennings v. Rodriguez*, 136 S. Ct. 2489 (2016).

## C. *Jennings v. Rodriguez*, 138 S. Ct. 830 (2018)

Our court's constructions of §§ 1225(b), 1226(a), and 1226(c) were sharply criticized in *Jennings*. In the Court's opinion, we had "adopted implausible constructions of the

three immigration provisions at issue" to hold "that detained aliens have a statutory right to periodic bond hearings under the provisions at issue." 138 S. Ct. at 836. As the Court explained, "[t]he canon of constitutional avoidance 'comes into play only when, after the application of ordinary textual analysis, the statute is found to be susceptible of more than one construction.'" *Id.* at 842 (quoting *Clark*, 543 U.S. at 385). The Court found no textual basis for our construction of those statutory provisions.

The Court began with §§ 1225(b)(1) and (b)(2). Observing that both provisions provide that an alien "shall be detained," *id.* at 837, 842, the Court explained that "[r]ead most naturally, [the statutes] mandate detention of applicants for admission until certain proceedings have concluded," *id.* at 842. The Court determined that "[d]espite the clear language," our court read an implicit six-month time limitation regarding the length of detention into them. *Id.* The Court rejected our reading because the provisions' text did not "hint[] that those provisions restrict detention after six months." *Id.* at 843. The Court explained that "[s]potting a constitutional issue does not give a court the authority to rewrite a statute as it pleases," but instead "the canon permits a court to 'choos[e] between competing *plausible* interpretations of a statutory text.'" *Id.* (quoting *Clark*, 543 U.S. at 381) (emphasis in original).

The Court also rejected our reliance on *Zadvydas* "to graft a time limit onto the text of § 1225(b)." *Id.* The Court explained that "*Zadvydas* concerned § 1231(a)(6)," a different provision "authoriz[ing] the detention of aliens who have already been ordered removed from the country." *Id.* The Court explained that *Zadvydas* construed § 1231(a)(6) to mean that an alien who is ordered removed may not be detained beyond a period reasonably necessary

to secure his removal, with six months as the presumptively reasonable period.  *Id.*  According to the Court, *Zadvydas* "justified this interpretation by invoking the constitutional-avoidance canon" to "detect[] ambiguity in the statutory phrase '*may* be detained.'"  *Id.* (emphasis in original).  Characterizing *Zadvydas* as "a notably generous application of the constitutional-avoidance canon," the Court determined that we "went much further" in construing §§ 1225(b)(1) and (b)(2).  *Id*.

The Court explained that we "failed to address whether *Zadvydas*'s reasoning may fairly be applied in this case despite the many ways in which the provision in question in *Zadvydas*, § 1231(a)(6), differs materially from those at issue here, §§ 1225(b)(1) and (b)(2)."  *Id.*  For one, unlike § 1231(a)(6), the provisions "provide for detention for a specified period of time."  *Id.* at 844.  Thus, detention under these statutes could not be indefinite like detention under § 1231(a)(6) could be without a limiting construction.  Second, whereas § 1231(a)(6) uses the word "may," §§ 1225(b)(1) and (b)(2) use the phrase "shall."  *Id.*  Thus, the latter provisions are clearly mandatory, whereas § 1231(a)(6) is not.  Finally, the Court found *Zadvydas* "particularly inapt" because Congress authorized the Attorney General to release aliens detained pursuant to §§ 1225(b)(1) and (b)(2) for urgent humanitarian reasons or a significant public benefit.  *Id.* (citing 8 U.S.C. § 1182(d)(5)(A)).  By "negative implication," the Court read this to exclude any other manner of release and to "preclude[] the sort of implicit time limit on detention that we found in *Zadvydas*."  *Id.*

The Court deemed § 1226(c)'s language "even clearer." *Id.* at 846.  The Court determined that § 1226(c) is not silent on the length of permissible detention because it mandates

detention of certain aliens pending removal proceedings. *Id.* The Court further determined that, pursuant to § 1226(c)'s terms, the Attorney General "may release" an alien detained pursuant to that provision "'*only if* the Attorney General decides' both that doing so is necessary for witness-protection purposes and that the alien will not pose a danger or flight risk." *Id.* (quoting 8 U.S.C. § 1226(c)(2)) (emphasis in original). Thus, the Court read this text to mean "aliens detained under its authority are not entitled to be released under any circumstances other than those expressly recognized by the statute." *Id.*

Turning to § 1226(a), the Court rejected our court's imposition of "procedural protections that go well beyond the initial bond hearing established by existing regulations—namely, periodic bond hearings every six months in which the Attorney General must prove by clear and convincing evidence that the alien's continued detention is necessary." *Id.* at 847. According to the Court, "[n]othing in § 1226(a)'s text—which says only that the Attorney General 'may release' the alien 'on . . . bond'—even remotely supports the imposition of either of those requirements." *Id.*[5] The Court ultimately remanded for consideration of the plaintiffs' constitutional due process challenges to the statutes at issue. *Id.* at 851.

---

[5] *Jennings* also rejected "layer[ing]" onto § 1226(a) a procedural requirement that would require an IJ to consider "the length of detention prior to a bond hearing . . . in determining whether the alien should be released." 138 S. Ct. at 848. Neither *Diouf II*, nor the district court's preliminary injunction require this. Thus, this aspect of *Jennings* is inapposite to this appeal.

*Jennings* clearly invalidated aspects of our court's prior constructions of §§ 1225(b), 1226(a), and 1226(c).  About this, we have no doubt.  *See Rodriguez v. Marin*, 909 F.3d 252, 255 (9th Cir. 2018) ("In *Jennings*[], the Supreme Court held that we misapplied the canon of constitutional avoidance to hold that certain immigration detention statutes, namely 8 U.S.C. §§ 1225(b), 1226(a), and 1226(c), implicitly contain a reasonableness determination after which due process concerns require that persons in prolonged mandatory detention are entitled to individualized bond hearings and possibly, conditional release.").  But this appeal requires us to determine the impact of *Jennings* on *Diouf II*'s construction of § 1231(a)(6), if any.

## II. *Diouf II* Is Not Clearly Irreconcilable with *Jennings*

Implicitly acknowledging that *Jennings* did not concern our construction of § 1231(a)(6), the Government urges us to conclude that *Jennings* has invalidated *Diouf II* and therefore to conclude further that we are no longer bound by *Diouf II*.  *See Miller*, 335 F.3d at 893.

The scope of our inquiry into whether *Diouf II* is clearly irreconcilable with *Jennings* is limited.  This inquiry does not call upon us to opine on whether *Diouf II* reached the right result, nor to determine whether we would construe § 1231(a)(6) differently.  *See Close v. Sotheby's, Inc.*, 894 F.3d 1061, 1073–74 (9th Cir. 2018) ("[T]he fact that we might decide a case differently than a prior panel is not sufficient grounds for deeming the [prior] case overruled.").  Instead, we must determine whether the Government's arguments satisfy the "high standard" of clear irreconcilability that governs in this circuit.  *Robertson*, 875 F.3d at 1291.  "[I]f we can apply our precedent consistently with that of the higher authority, we *must* do so."  *FTC*, 926 F.3d at 1213  (emphasis added).  "Nothing

short of 'clear irreconcilability' will do." *Close*, 894 F.3d at 1073.

The Government advances three overlapping arguments to persuade us that *Jennings* effectively overruled *Diouf II*. First, the Government argues that *Diouf II*'s application of the canon of constitutional avoidance to § 1231(a)(6) contravenes *Jennings*'s mode of applying the canon to the other immigration detention statutes. Second, the Government argues that *Jennings*'s rejection of construing § 1226(a) to require certain procedural protections forecloses *Diouf II*'s construction of § 1231(a)(6). Third, the Government argues that *Diouf II* is no longer good law because *Jennings* reversed a decision of our court that applied *Casas-Castrillon*'s construction of § 1226(a), a decision on which *Diouf II* relied.

We consider and ultimately reject each of the Government's arguments. Although we recognize some tension between *Diouf II* and *Jennings*, the Government has not persuaded us that *Diouf II* is "so fundamentally inconsistent with" *Jennings* that we may overrule *Diouf II* now. *In re Gilman*, 887 F.3d at 962. Apart from rejecting the Government's arguments, we find additional support for the conclusion that *Diouf II* is not clearly irreconcilable with *Jennings* in the Third Circuit's decision in *Guerrero-Sanchez v. Warden York County Prison*, 905 F.3d 208 (3d Cir. 2018), which expressly adopted *Diouf II*'s construction of § 1231(a)(6) in the wake of *Jennings*.

## A. *Diouf II*'s Application of the Canon of Constitutional Avoidance

The Government's core contention is that *Diouf II*'s application of the canon of constitutional avoidance to § 1231(a)(6) runs afoul of *Jennings*. We understand this

argument to concern two points specific to *Diouf II*'s interpretation of § 1231(a)(6).  First, the Government argues that *Jennings* abrogated our application of the canon of constitutional avoidance to § 1231(a)(6) in *Diouf II*.  Second, the Government contends that *Jennings* overrides the conclusion that § 1231(a)(6) may be construed to authorize release on bond and thus *Diouf II*'s application of the canon to construe § 1231(a)(6) as requiring a bond hearing cannot stand after *Jennings*.**[6]**

In defense of *Diouf II*, Plaintiffs argue that in *Jennings*, the Court "explicitly reaffirmed its prior holding in *Zadvydas* that [§] 1231(a)(6) is amenable to the canon of constitutional avoidance."  Although we agree that *Zadvydas* plays an important role in our analysis given *Jennings*'s discussion of that decision, we do not think that the clear irreconcilability analysis here is as simple as Plaintiffs posit.  The Government does not challenge whether the canon may be applied to § 1231(a)(6) at all, but rather contends that *Jennings* shows that *Diouf II* improperly applied the canon to construe § 1231(a)(6) as requiring a bond hearing.  As Plaintiffs recognize, *Zadvydas* did not construe § 1231(a)(6) in this manner.  Thus, we must consider the distinct question of whether *Diouf II*'s particular application of the canon runs afoul of *Jennings*.

---

**[6]** We distinguish these arguments from the related, yet distinct issue of whether *Diouf II* properly construed § 1231(a)(6) to require a bond hearing after six months of detention.  We consider that issue in our analysis of the Government's argument regarding *Jennings*'s rejection of our court's construction of § 1226(a) to require "periodic bond hearings" after six months of detention, beyond the bond hearing that the government's regulations already provided at the outset of detention for an alien detained pursuant to the government's § 1226(a) detention authority.

The Government tells us that *Diouf II*'s application of the canon runs afoul of *Jennings* because, in the Government's view, *Diouf II* merely spotted a constitutional issue regarding prolonged detention that it solved by applying the canon to "insert" a bond hearing requirement into § 1231(a)(6). Pointing to the Court's rejection in *Jennings* of our application of the canon to the other immigration detention statutes, the Government invites us to reject *Diouf II*'s construction of § 1231(a)(6) as erroneously requiring "the very same relief that the Supreme Court found inconsistent with three distinct immigration statutes."

Although we acknowledge the superficial appeal of the Government's suggestion, it carries little weight for us in our clear irreconcilability analysis. As a general matter, "we 'must be careful not to apply the rules applicable under one statute to a different statute without careful and critical examination.'" *Murray v. Mayo Clinic*, 934 F.3d 1101, 1106 (9th Cir. 2019) (quoting *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 174 (2009)). That admonition carries force here. In no fewer than ten instances, the Court expressly qualified in *Jennings* that it rejected our application of the canon to the statutory provisions "at issue" there. *Jennings*, 138 S. Ct. at 836, 839, 842, 843, 844, 850, 851. The Court's repeated use of that limiting language strongly suggests that we should not read the Court's rejection of our application of the canon to the other immigration detention statutes as alone undercutting *Diouf II*'s application of the canon to § 1231(a)(6). As we discuss in Part II.B.3, this conclusion is inescapable given the material textual differences between § 1231(a)(6) and the other immigration detention statutes, a point that the Court underscored throughout its analysis in *Jennings*.

Our dissenting colleague takes issue with our observation that *Jennings* repeatedly qualified that its focus was on the statutory provisions at issue there, namely §§ 1225(b), 1226(a), and 1226(c). The dissent contends that *Jennings*'s repeated and express limitations do not deprive that decision "of all persuasive force" in the clear irreconcilability inquiry presented here. Dissent at 61 n.2. (quoting *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 351 (2013)). Drawing on the recent decision in *Murray v. Mayo Clinic*, 934 F.3d 1101 (9th Cir. 2019), in which a three-judge panel of our court concluded that an earlier circuit precedent was clearly irreconcilable with two intervening Supreme Court decisions, the dissent argues "that *Jennings* and *Diouf II* analyzed different statutes is not dispositive of their irreconcilability." Dissent at 62 n.2. We do not understand this critique.**[7]** We have not described

---

**[7]** We similarly do not understand the dissent's reliance on *Murray*'s clear irreconcilability analysis. *Murray* addressed the continued viability of our court's holding in *Head v. Glacier Northwest, Inc*, 413 F.3d 1053 (9th Cir. 2005) that Title I of the Americans with Disabilities Act (ADA) requires only a showing that disability was a motivating factor to prove a violation. The relevant statutory provision prohibited discrimination "on the basis of disability." 42 U.S.C. § 12112(a). After *Head*, the Court interpreted the phrase discrimination "because of such an individual's age" in the Age Discrimination in Employment Act (ADEA) to require but-for causation and rejected a motivating factor analysis. *Gross v. FBL Fin. Servs., Inc*., 557 U.S. 167, 177–78 (2009). The Court subsequently held that the phrase "because of" in Title VII's anti-retaliation provision also requires but-for causation, again rejecting the motivating factor standard. *Nassar*, 570 U.S. at 351–53. The *Murray* panel determined that *Head* is clearly irreconcilable with *Gross* and *Nassar*'s interpretation of similar statutory text and held that Title I requires but-for causation as well. *Murray*, 934 F.3d at 1106 ("Under *Gross*, the phrase 'on the basis of disability' indicates but-for causation."); *id.* (reasoning that *Nassar*, 570 U.S. at 350, explains that *Gross*'s holding that "because of," "by reason of," "on account of," and "based on" all indicate a but-for causal relationship). Contrary to the dissent's suggestion, this case is not

*Jennings*'s repeated qualifications regarding its limited focus on the statutory provisions at issue there as dispositive of the clear irreconcilability analysis.  Instead, our observation leads us to reject the Government's simplistic argument that the mere fact that *Jennings* invalidated our court's application of the canon to other immigration detention statutes alone gives us license to overrule *Diouf II*. *See Shaibi v. Berryhill*, 883 F.3d 1102, 1109 (9th Cir. 2018) (amended opinion) (concluding that the Supreme Court's "express limitation on its holding" in the intervening decision did not render the prior circuit decision clearly irreconcilable with the intervening decision).  More critically, as we explain in Part II.B.3, it is the material textual differences amongst the immigration detention statutes that *Jennings* expressly and repeatedly recognized that give *Jennings*'s treatment of the other statutory provisions little weight in our clear irreconcilability analysis.

Focusing squarely on *Diouf II*, the Government argues more narrowly that § 1231(a)(6) cannot be construed to require an individualized bond hearing because the provision does not expressly use the word "bond."  The government raised this very argument in *Diouf II*.  634 F.3d at 1089.  But now relying on *Jennings*, the Government contends that *Diouf II* runs afoul of *Jennings*'s admonition that "[s]potting a constitutional issue does not give a court the authority to rewrite a statute as it pleases."  138 S. Ct. at 843.

---

*Murray*.  Unlike the provisions discussed there, we are not confronted with nominal and immaterial differences between the provisions at issue in *Jennings* and § 1231(a)(6).  In reining in our court's reliance on *Zadvydas* and the canon to construe the immigration detention statutes at issue in *Jennings*, the Court made it eminently clear that the textual differences amongst the statutes *are* material.  *See Jennings*, 138 S. Ct. at 843.

This argument is not without some appeal. The Government points us only to Part III of *Diouf II*. In a single paragraph, our court identified constitutional concerns with "prolonged detention under § 1231(a)(6), without adequate procedural protections[.]" *Diouf II*, 634 F.3d at 1086. "To address those concerns," we "appl[ied] the canon of constitutional avoidance and construe[d] § 1231(a)(6) as requiring an individualized bond hearing, before an immigration judge, for aliens facing prolonged detention under that provision." *Id*. (citing *Casas-Castrillon*, 535 F.3d at 951)*.* This portion of *Diouf II* contained no analysis regarding the canon's application to § 1231(a)(6)'s text. We also recognized elsewhere in *Diouf II* that § 1231(a)(6) does not explicitly use the word "bond." *Id.* at 1089. These aspects of *Diouf II* give us pause in light of *Jennings*, but only briefly.

In *Diouf II*, we recognized that the canon is a tool of statutory construction that applies when an act of Congress raises a serious constitutional doubt. *Diouf II*, 634 F.3d at 1086 n.7. And we recognized that a federal court utilizes the canon to "'decid[e] which of two plausible statutory constructions to adopt[.]'" *Id.* at 1088 (quoting *Clark*, 543 U.S. at 380−81). Contrary to the Government's contention that *Diouf II* did not grapple with § 1231(a)(6)'s text to justify its application of the canon, *Diouf II* did so. Section 1231(a)(6) provides that "if released" from detention beyond the removal period, an alien "shall be subject to the terms of supervision in [§ 1231(a)](3)." 8 U.S.C. § 1231(a)(6). In *Diouf II*, although we recognized that § 1231(a)(6) does not use the word "bond," we "ha[d] no doubt that bond is also authorized under §1231(a)(6), *as we have held and as Department of Homeland Security (DHS) regulations acknowledge*." 634 F.3d at 1089. (citing *Diouf*

*I*, 542 F.3d at 1234; 8 C.F.R. § 241.5(b)) (emphasis added).**8** We fail to see how *Jennings* undercuts this articulation and application of the canon.

*Jennings* "expressly looked" to the same underlying principles and applied the canon "consistent with th[ose] principles[.]" *Lair*, 697 F.3d at 1207. *Jennings* first affirmed that the canon applies "[w]hen 'a serious doubt' is raised about the constitutionality of an act of Congress," pursuant to which "'. . . this Court will first ascertain whether a construction of the statute is fairly possible by which the question may be avoided.'" *Jennings*, 138 S. Ct. at 842 (quoting *Crowell v. Benson*, 285 U.S. 22, 62 (1932)). *Jennings* then reiterated that "the canon permits a court 'to choos[e] between competing plausible interpretations of a statutory text.'" *Id*. at 843 (quoting *Clark*, 543 U.S. at 381) (emphasis in original omitted). *Jennings* reiterated what the Court had already said about the canon in several cases decided long before our *Diouf II* decision. *See United States v. Locke*, 471 U.S. 84, 96 (1985) ("We cannot press statutory construction 'to the point of disingenuous evasion' even to avoid a constitutional question.") (quoting *George Moore Ice Cream Co. v. Rose*, 289 U.S. 373, 379 (1933)); *see also Clark*, 543 U.S. at 381, 385; *United States v. Oakland Cannabis Buyers' Co-op.*, 532 U.S. 483, 494 (2001).

The Government and the dissent conspicuously ignore that *Diouf II* articulated and relied on the same principles governing application of the canon as *Jennings*. We have

---

**8** 8 C.F.R. § 241.5 is a regulation that applies to aliens who the government releases from § 1231(a)(6) detention. The regulation provides that an officer may require the posting of a bond to ensure an alien complies with the conditions of a supervision order. *Id.* As Plaintiffs acknowledge, this regulation remains in effect.

explained, however, that when an intervening decision from a higher authority does not "change the state of the law," but instead "clarifie[s] and reinforce[s]" law that existed at the time of the prior circuit decision, it is unlikely to satisfy the *Miller* standard. *Lair*, 697 F.3d at 1207; *see also Nat'l Fed'n of the Blind v. United Airlines, Inc.*, 813 F.3d 718, 728 (9th Cir. 2016) (reasoning in part that a prior circuit decision was "not so 'clearly irreconcilable'" with an intervening Supreme Court decision because the intervening decision did not "represent a significant shift" in the relevant jurisprudence). The dissent identifies nothing new in *Jennings* regarding the canon's application that *Diouf II* failed to articulate in applying the canon.[9] As our analysis shows, *Jennings* did not do so but rather engaged in statutory-specific applications of the canon. We thus reject the argument that *Diouf II*'s application of the canon to § 1231(a)(6) is clearly irreconcilable with *Jennings*'s mode of applying the canon.[10]

---

[9] Our court did not decide *Diouf II* in a statutory vacuum. Rather, that decision's construction of § 1231(a)(6) followed *Zadvydas*, which identified ambiguity in § 1231(a)(6)'s text regarding the government's authority to detain an alien, and two earlier circuit precedents which construed § 1231(a)(6) to authorize release on bond. *Diouf I*, 542 F.3d at 1234; *Doan v. I.N.S.*, 311 F.3d 1160 (9th Cir. 2002). *Diouf II* relied on these decisions to apply the canon. *See Diouf II*, 634 F.3d at 1087–88, 1091–92 & nn.10–13 (referring to *Zadvydas* on multiple occasions in the context of applying the canon); *id*. at 1089 (referring to *Diouf I*, which in turn relied on *Doan*).

[10] For the first time, in its reply brief, the Government argues that *Jennings* established a framework that "obligated" the district court to look first to "*Zadvydas*'s construction of § 1231(a)" and then to consider *Diouf II*'s application of the canon of constitutional avoidance to determine whether *Diouf II* comported with *Zadvydas*. We do not normally consider arguments raised for the first time in a reply brief. *See*

We also reject the Government's contention that *Jennings* overrides our court's conclusion that § 1231(a)(6) authorizes release on bond—a conclusion central to *Diouf II*'s application of the canon to the statute. *Diouf II*'s construction of § 1231(a)(6) to require a bond hearing plainly followed from two of our decisions that construed the statute to encompass bond as a condition of release from detention that the statute authorizes.

We first construed § 1231(a)(6) to allow an alien's release on bond in *Doan v. I.N.S.*, 311 F.3d 1160 (9th Cir. 2002), a case we decided shortly after *Zadvydas*. There, we observed that §§ 1231(a)(3) and 1231(a)(6) authorize an alien's release from detention on terms of supervision. We determined that "a bond is well within the kinds of conditions contemplated by the Supreme Court in *Zadvydas*, where the Court observed that 8 C.F.R. § 241.5 establishes conditions of release." *Id.* at 1161 (citing *Zadvydas*, 533 U.S. at 688–89, 695–96). Pursuant to that regulation, the government had required an alien to post bond as a condition of release. *Id.* Thus, we rejected the alien's "contention that because a bond is not expressly listed as a condition in the statute, imposition of any bond as a condition of release is unlawful." *Id.* at 1162. Building on *Doan*, in *Diouf I*, we rejected the government's argument that "Diouf was statutorily ineligible for release on bond" as an alien detained pursuant to § 1231(a)(6) because "[w]e have specifically construed § 1231(a)(6) to permit release on

---

*Padgett v. Wright*, 587 F.3d 983, 985 n.2 (9th Cir. 2009). Nevertheless, even considering the argument, we readily reject it for the simple reason that the Government reads into *Jennings* a "framework" that the Court neither articulated, nor even hinted at.

bond." *Diouf I*, 542 F.3d at 1234 (citing *Doan*, 311 F.3d at 1160).

Relying on these earlier precedents, *Diouf II* applied the canon of constitutional avoidance to construe § 1231(a)(6) not only as authorizing release on bond, but as requiring a bond hearing in light of the constitutional issue of prolonged detention. The Government does not acknowledge our decisions construing § 1231(a)(6)'s allowance for release to encompass release on bond, nor does the Government acknowledge *Diouf II*'s reliance on them. *Diouf II*, 634 F.3d at 1089 (citing *Diouf I*, 542 F.3d at 1234; 8 C.F.R. § 241.5(b)). Were we to accept the Government's argument that § 1231(a)(6) does not even authorize release on bond, we would have to abrogate not only *Diouf II*, but also *Doan* and *Diouf I*, on which *Diouf II*'s analysis of § 1231(a)(6) rested.[11] But neither *Doan* nor *Diouf I* relied on the canon to construe § 1231(a)(6), and thus *Jennings* does not undercut either of them. We otherwise see nothing in either decision that is clearly irreconcilable with *Jennings* and therefore we are not free to overrule them. *Miller*, 335 F.3d

---

[11] The dissent sees "no ineluctable reason" why we would need to overrule these precedents to accept the Government's argument, Dissent at 65 n.12, and explains them away as merely concerned with the government's authority to release an alien on bond to arrive at the conclusion that *Diouf II* failed to identify a plausible basis in § 1231(a)(6)'s text for a bond hearing requirement, *id.* at 63–66. We do not understand this reasoning. Whether a statute authorizes release on bond is the necessary predicate to whether that statute can be construed to require such release pursuant to a bond hearing. Ignoring these commonsense propositions, the dissent elides *Diouf II*'s application of the canon to construe § 1231(a)(6) not only to provide for a bond hearing, but as requiring a bond hearing after six months of detention to avoid the constitutional problem of prolonged detention.

at 893.  Because *Jennings* does not affect these decisions, we reject the Government's first set of arguments.

## B. *Jennings*'s Rejection of Construing § 1226(a) to Require Certain Procedural Protections Does Not Undercut *Diouf II*

*Jennings* rejected, in relevant part, the addition of two procedural protections onto § 1226(a): (1) "periodic bond hearings every six months," (2) "in which the Attorney General must prove by clear and convincing evidence that the alien's continued detention is necessary[.]" *Id.* at 847–48.   The Government contends that § 1231(a)(6)'s "operative language directly mirrors" § 1226(a) because both provisions provide that the government may detain an alien, and thus *Jennings* forecloses construing § 1231(a)(6) to require these protections as well.  More sweepingly, the Government suggests that *Jennings* rejected construing § 1226(a) to require a bond hearing at all, thereby also undercutting *Diouf II*'s construction of § 1231(a)(6) to require a bond hearing.  We dispose readily of two of the Government's arguments, and then turn to the issue of "periodic bond hearings."

### 1. *Jennings* Does Not Invalidate *Singh*'s Constitutional Due Process Burden of Proof Holding

We reject first the Government's reliance on *Jennings*'s rejection of construing § 1226(a) to require the government to justify an alien's continued detention by clear and convincing evidence.   Although *Jennings* undoubtedly rejected construing the statute to require such a burden, that rejection is inapposite here.

Contrary to the Government's suggestion, *Diouf II* did not construe § 1231(a)(6) to impose such a burden, nor did we premise our determination that the government must meet such a burden on construing any of the immigration detention statutes. In *Singh*, we explained that, "[n]either *Casas-Castrillon*, nor any other Ninth Circuit, *statutory or regulatory authority* specifies the appropriate standard of proof at a *Casas*[-*Castrillon*] bond hearing." 638 F.3d at 1203 (emphasis added). Rather than construe any statute, we determined that constitutional procedural due process required the government to meet the clear and convincing burden of proof standard. *Singh*, 638 F.3d at 1203–04; *see also Kashem v. Barr*, 941 F.3d 358, 380 (9th Cir. 2019) (acknowledging *Singh*'s clear and convincing evidence burden as a procedural due process standard "which applies in a range of civil proceedings involving substantial deprivations of liberty."). *Rodriguez III*, in turn, relied on *Singh* to affirm a clear and convincing burden of proof for bond hearings held pursuant to our constructions of the immigration detention statutes. *Rodriguez III*, 804 F.3d at 1087. Thus, *Jennings*'s rejection of layering such a burden onto § 1226(a) *as a matter of statutory construction* cannot undercut *Diouf II*, nor undercut our constitutional due process holding in *Singh*.

### 2. *Jennings* Did Not Reject Reading § 1226(a) to Authorize a Bond Hearing

Second, we reject the Government's reading of *Jennings* as foreclosing construction of § 1226(a) to authorize a bond hearing at all. Rather than focus on the Court's § 1226(a) analysis, the Government misdirects us to the Court's observation that "neither §1225(b)(1) nor §1225(b)(2) says anything whatsoever about bond hearings." *Jennings*,

138 S. Ct. at 842.  The Court, however said no such thing about § 1226(a).

Section 1226(a) provides that the Attorney General "may release" an alien detained pursuant to that provision "on bond" or "on conditional parole."  8 U.S.C. § 1226(a)(2)(A), (B).  The Court expressly acknowledged that "[f]ederal regulations provide that aliens detained under § 1226(a) receive bond hearings at the outset of detention."  *Jennings*, 138 S. Ct. at 847 (citing 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1)).  Section 1226(a) does not use the word "hearing."  The Court, however, did not suggest that the regulations' provision of those bond hearings was somehow at odds with the government's § 1226(a) detention authority pursuant to the statutory text.[12]  Instead, the Court took issue with our court's imposition of "procedural protections that *go well beyond the initial bond hearing established by existing regulations*" for aliens detained pursuant to § 1226(a).  *Id.* (emphasis added).  The Court's rejection of our court's imposition of a six-month bond hearing requirement for aliens detained pursuant to § 1226(a) beyond the regulations' provision of a single bond hearing at the outset of detention is not the same as rejecting a construction of § 1226(a) to authorize or require bond hearings at all.  Thus, we cannot agree with one of the

---

[12] Like the Government, the dissent focuses on the absence of the word "hearing" in § 1231(a)(6).  Dissent at 65.  In doing so, the dissent ignores the absence of that word in § 1226(a), and *Jennings*'s analysis regarding that provision.  Tellingly, there is nothing in *Jennings* that rejects reading § 1226(a) to require a bond hearing at all, as opposed to our erroneous reading of that provision to require a bond hearing at a particular point in time.  As we explain in Part II.B.3, *Jennings*'s rejection of our court's bond hearing requirement for § 1226(a) cannot be fairly applied to *Diouf II*'s construction of § 1231(a)(6) in light of *Zadvydas*.

fundamental premises underlying the Government's challenge to *Diouf II* based on the Court's treatment of § 1226(a) in *Jennings*.

### 3. *Jennings*'s Rejection of a Six-Month Bond Hearing Requirement for Aliens Detained Pursuant to § 1226(a) Does Not Undercut *Diouf II*'s Construction of § 1231(a)(6)

The merits of the Government's clear irreconcilability challenge to *Diouf II*'s bond hearing requirement ultimately come down to *Jennings*'s rejection of construing § 1226(a) to contain a periodic bond hearing requirement. Reviewing the Court's actual reasoning in *Jennings*, including with respect to all the provisions at issue there, we cannot agree that *Jennings*'s treatment of § 1226(a) on this issue undercuts *Diouf II*.

In the decision that *Jennings* reversed, we used the phrase "periodic bond hearing" to refer to bond hearings every six months. *Rodriguez III*, 804 F.3d at 1089. The Court used the phrase "periodic bond hearing" to encompass a bond hearing held initially at six months of detention. *Jennings*, 138 S. Ct. at 850–51 ("The Court of Appeals held that aliens detained under the provisions at issue must be given periodic bond hearings, and the dissent agrees. . . . But the dissent draws that 6-month limitation out of thin air. . . [N]othing in any of the relevant provisions imposes a 6-month time limit on detention without the possibility of bail."). Even if we apply the Court's definition, we fail to see how *Jennings* undercuts *Diouf II*'s construction of § 1231(a)(6) to require a bond hearing after the government detains an alien pursuant to this statutory provision for six months and whose release or removal is not imminent.

Similar to our observation in the discussion of the Government's constitutional avoidance argument, we observe here that *Jennings* repeatedly qualified that its rejection of a "periodic bond hearing" requirement applied to the statutory provisions at issue there. *Jennings*, 138 S. Ct. at 836 ("All parties appear to agree that the text of [§§ 1225(b), 1226(a), 1226(c)], when read most naturally, does not give detained aliens the right to periodic bond hearings during the course of their detention."); *id.* ("[T]he Court of Appeals for the Ninth Circuit held that detained aliens have a statutory right to periodic bond hearings *under the provisions at issue*." (emphasis added)); *id.* at 844 ("[A] series of textual signals distinguishes *the provisions at issue* in this case from *Zadvydas*'s interpretation of § 1231(a)(6)." (emphasis added)); *id.* at 850–51 ("The Court of Appeals held that aliens detained under the provisions at issue must be given periodic bond hearings, and the dissent agrees. . . . But the dissent draws that 6-month limitation out of thin air. However broad its interpretation of the words 'detain' and 'custody,' nothing *in any of the relevant provisions* imposes a 6-month time limit on detention without the possibility of bail." (emphasis added)); *id.* at 851 ("Because the Court of Appeals erroneously concluded that periodic bond hearings are required *under the immigration provisions at issue here* . . ." (emphasis added)).  The Court's repeated use of this language strongly suggests that we should not read the Court's rejection of a six-month bond hearing requirement for § 1226(a) as undercutting *Diouf II*'s construction of § 1231(a)(6) to require a bond hearing after six months of detention when an alien's release or removal is not imminent.

We find that conclusion inescapable when we look at *Jennings*'s careful focus on the text of the provisions at issue there and the ways in which they differ from § 1231(a)(6)

and thus whether *Zadvydas*'s reasoning could apply to the other provisions at all. In rejecting our constructions of §§ 1225(b)(1) and (b)(2) to contain an implicit six-month time limit, the Court underscored that *Zadvydas* applied the canon to § 1231(a)(6) based on ambiguity in the provision's "may be detained" language *and* because the provision contained no limitation on the permissible length of detention. *Jennings*, 138 S. Ct. at 843 (noting that in contrast to §§ 1225(b)(1) and (b)(2), "Congress left the permissible length of detention under §1231(a)(6) unclear."); *Zadvydas*, 533 U.S. at 697. Rather than allow the government to subject an alien to potentially indefinite detention, as *Jennings* explained, *Zadvydas* construed § 1231(a)(6) to hold that "an alien who has been ordered removed may not be detained beyond 'a period reasonably necessary to secure removal'" with "six months a[s] a presumptively reasonable period." *Jennings*, 138 S. Ct. at 843 (quoting *Zadvydas*, 533 U.S. at 699 and citing *Zadvydas*, 533 U.S. at 701). As the Court explained, detention pursuant to §§ 1225(b)(1) or (b)(2) presented no such issue based on the clear text of those provisions. *Id.* at 843–44.

The Court's analysis of § 1226(a) in *Jennings* was sparse. But the Court's reasoning in its discussion of §§ 1225(b)(1) and (b)(2) applies to § 1226(a) as well. Contrary to the Government's singular focus on §§ 1226(a) and 1231(a)(6)'s use of the "may be detained" language, the provisions are materially distinct in the meaning of this language. Unlike § 1231(a)(6), "§ 1226(a) authorizes the Attorney General to arrest and detain an alien 'pending a decision on whether the alien is to be removed from the United States.'" *Id.* at 847 (quoting 8 U.S.C. § 1226(a)). Thus, as a textual matter, discretionary detention pursuant to § 1226(a) has an end point, unlike discretionary detention pursuant to § 1231(a)(6) absent a limiting construction.

Pursuant to the Court's own reasoning elsewhere in *Jennings*, the six-month presumptive time limitation that *Zadvydas* read into § 1231(a)(6) to address potentially indefinite detention pursuant to that provision does not "fairly apply" to detention pursuant to § 1226(a).

This material difference between §§ 1226(a) and 1231(a)(6) prevents us from concluding that *Jennings*'s rejection of construing § 1226(a) to require a bond hearing at six months applies to § 1231(a)(6).[13]  Unlike with any of the other immigration detention statutes at issue in *Jennings*, *Diouf II* concerned the statutory provision at issue in *Zadvydas* and adopted a definition of prolonged detention that coincides with the presumptive six-month time limit that *Zadvydas* read into that provision based on § 1231(a)(6)'s textual ambiguity.  *Compare Zadvydas*, 533 U.S. at 701 *with Diouf II*, 634 F.3d at 1091–92 & n.13.  Further echoing

---

[13] The dissent's analysis proceeds on the mistaken assumption that there are no material differences between §§ 1226(a) and 1231(a)(6). Dissent at 61–62 n.2.  In doing so, the dissent does not engage with *Jennings*'s reasoning and analysis regarding the statutory provisions at issue there.  Moreover, the dissent commits the converse of the error that led the Court to reject our application of the canon to the other immigration detention statutes.  Dissent at 67 (contending that *Jennings* rejected the "scaffolding upon which we had erected" additional procedural protections for § 1226(a) detainees.).  Whereas as we had ignored the textual differences amongst the immigration detention statutes to apply the canon to those statutes in the wake of the Court's application of the canon to § 1231(a)(6) in *Zadvydas*, the dissent uncritically applies *Jennings*'s limited analysis concerning § 1226(a) to *Diouf II*'s construction of § 1231(a)(6) despite the ways in which *Jennings*'s reasoning shows that these provisions are materially distinct. *Jennings*'s actual analysis prevents us from finding clearly irreconcilability here.  *Cf. Murray*, 934 F.3d at 1106 n.6 (finding clear irreconcilability when there were "no meaningful textual difference[s]" in the statutory text at issue there and the different provisions considered by two intervening decisions).

*Zadvydas*, *Diouf II* also qualified that its construction of § 1231(a)(6) to require a bond hearing does not apply if an alien's release or removal is imminent. *Compare Zadvydas*, 533 U.S. at 701 ("[A]n alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.") *with Diouf II*, 634 F.3d at 1092 n.13.

Although *Jennings* rejected our court's reliance on *Zadvydas* to construe the other immigration detention statutes and rejected construing § 1226(a) to require a six-month bond hearing, we cannot find in *Jennings*'s reasoning a rationale that clearly undercuts *Diouf II*'s six-month bond hearing requirement for aliens detained pursuant to § 1231(a)(6). Contrary to the dissent's view, *Jennings* shows that *Zadvydas*'s construction of § 1231(a)(6) provides an "arguable statutory foundation," 138 S. Ct. at 842, for *Diouf II*'s six-month bond hearing requirement that is entirely absent from the other immigration detention provisions.[14]

---

[14] The dissent posits that "we have given short shrift to" the motivations underlying the Court's decision in *Zadvydas*, specifically that the decision "was largely motivated by the fact that the possibility of removal of the aliens before it was truly remote because the countries to which they could be removed were highly unlikely to accept them at any time in the foreseeable future." Dissent at 63 n.4. That is incorrect. As the Court has instructed, *Zadvydas*'s construction of § 1231(a)(6) applies to all aliens detained pursuant to § 1231(a)(6) even if "the constitutional concerns that influenced our statutory construction in *Zadvydas* are not present for aliens" in other circumstances. *Clark*, 543 U.S. at 380. And the Court has rejected the notion that statutory ambiguity disappears based on the circumstances of a given alien detained pursuant to § 1231(a)(6). "Be that as it may, it cannot justify giving the *same* detention provision a different meaning when such aliens are involved. It is not at all unusual to give a statute's ambiguous

In its reply brief, the Government makes much of that fact that *Jennings* called into question *Zadvydas*'s reading of § 1231(a)(6) as a "notably generous application of the canon." 138 S. Ct. at 843. But the Court did not overrule *Zadvydas*; its statutory analysis, including application of the canon, remain intact.[15] We therefore cannot conclude that *Diouf II*'s construction of § 1231(a)(6) to require a bond hearing after six months of detention runs afoul of *Jennings*. We understand that the Government strenuously disagrees with *Diouf II*'s bond hearing requirement as inconsistent with the habeas framework that *Zadvydas* outlined and with the Government's post-*Zadvydas* regulations. That disagreement, however, has nothing to do with whether *Jennings*, by its own terms, undercuts *Diouf II*'s construction of § 1231(a)(6). Accordingly, we reject the Government's second argument.

---

language a limiting construction called for by one of the statute's applications, even though other of the statute's applications, standing alone, would not support the same limitation." *Id*. (emphasis in original).

[15] In failing to account for *Jennings*'s reasoning regarding *Zadvydas* and *Diouf II*'s reliance on *Zadvydas*'s reading of § 1231(a)(6), the dissent characterizes the textual ambiguity in § 1231(a)(6) that *Zadvydas* identified as a "narrow ambiguity." Dissent at 63–64. We know of no basis in our clear irreconcilability jurisprudence that would allow us to overrule the prior decision of a three-judge panel on the basis of a reason that appears nowhere in the intervening authority's decision. Neither *Jennings*, nor *Zadvydas* said anything about the scope of the ambiguity in § 1231(a)(6) that *Zadvydas* identified. Contrary to the dissent's view, *Jennings*'s questioning of *Zadvydas*'s particular application of the canon to that ambiguity—the adoption of a six-month time limitation that *Jennings* rejected as a matter of statutory construction for the other immigration detention statutes—says nothing about the ambiguity's scope.

## C. *Diouf II*'s Reliance on *Casas-Castrillon*

As a final matter, the Government contends that *Diouf II* is clearly irreconcilable with *Jennings* based on the inter-related nature of our decisions in *Casas-Castrillon*, *Diouf II*, and *Rodriguez III*. The Government's argument is as follows: (1) *Diouf II* extended *Casas-Castrillon*'s construction of § 1226(a) to individuals subject to prolonged detention pursuant to § 1231(a)(6), (2) *Rodriguez III* also applied *Casas-Castrillon*'s construction of § 1226(a), (3) *Jennings* reversed *Rodriguez III*, and, thus, by implication, (4) *Jennings* and *Diouf II* are clearly irreconcilable. We reject these arguments for two reasons.

First, we think that the Government misreads both *Casas-Castrillon* and *Jennings*. As we have explained, *Jennings* did not invalidate construing § 1226(a) to authorize a bond hearing at all, but rather rejected construing § 1226(a) to require a bond hearing at six months in addition to the government's existing bond hearing regulations. More importantly here, *Casas-Castrillon* did not construe § 1226(a) in the manner that the Court rejected in *Jennings*. *Casas-Castrillon* applied the canon of constitutional avoidance to construe § 1226(a)'s authorization for release of an alien on bond as requiring an individualized bond hearing when an alien is subject to prolonged detention. 535 F.3d at 951. By the time our court decided *Rodriguez III*, we had applied *Diouf II*'s definition of prolonged detention as detention lasting longer than six months to § 1226(a), which transformed *Casas-Castrillon*'s bond hearing requirement into a six-month bond hearing requirement. *See Rodriguez II*, 715 F.3d at 1139 ("*Diouf II* strongly suggested that immigration detention becomes prolonged at the six-month mark regardless of the authorizing statute. . . . Even if *Diouf II* does not squarely

hold that detention always becomes prolonged at six months, that conclusion is consistent with the reasoning of *Zadvydas*, *Demore*, *Casas*[-*Castrillo*n], and *Diouf II*, and we so hold."); *see also Rodriguez III*, 804 F.3d at 1078 & n.7. By its terms, *Jennings* invalidates *that* aspect of our case law construing § 1226(a), but does not go further.[16]

Second, even if we concluded here that *Jennings* overruled *Casas-Castrillon*, we do not see how that could undercut *Diouf II* entirely. *Diouf II*'s construction of § 1231(a)(6) did not rest solely on its purported extension of *Casas-Castrillon* to aliens detained pursuant to § 1231(a)(6). *Diouf II*, 634 F.3d at 1086. As we have explained, *Diouf II* considered a number of arguments particular to § 1231(a)(6) itself that could not have applied to *Casas-Castrillon*'s analysis of § 1226(a). *Id.* at 1086–92. More critically, as *Jennings*'s reasoning makes clear, *Casas-Castrillon* concerned a statutory provision that is materially different from the provision at issue in *Diouf II*. Thus, we conclude that *Diouf II* can stand irrespective of its reliance on *Casas-*

---

[16] The dissent contends that in rejecting the Government's challenge to *Diouf II* based on its argument here, we have suggested that "some of *Casas-Castrillon* survives *Jennings*[.]" Dissent at 68 n.14. Our response is twofold. For one, we have done nothing more than explain why we think the Government's challenge to *Diouf II* based on *Jennings* is wrong. We have not decided what specifically remains of *Casas-Castrillon*'s statutory holding after *Jennings*. Second, we do not take issue with the dissent's correct understanding that *Jennings* invalidated procedural protections that go beyond what the government's regulations provide. *Id.* However, we otherwise part ways with the dissent's reading of *Jennings*. As we have explained, *Jennings*'s approval of the government's regulations to provide bond hearings for aliens detained pursuant to § 1226(a) necessarily assumes that § 1226(a) can be plausibly read to authorize such hearings in the first place.

*Castrillon*.[17]   Because we reject this final argument, we conclude that the Government has not shown that *Diouf II* is clearly irreconcilable with *Jennings*.

## D.  Additional Support for *Diouf II* After *Jennings*

Apart from rejecting the Government's arguments, we find additional support for our conclusion that *Diouf II* is not clearly irreconcilable with *Jennings* based on the Third Circuit's decision in *Guerrero-Sanchez v. Warden York County Prison*, 905 F.3d 208 (3d Cir. 2018).

In *Guerrero-Sanchez*, the Third Circuit considered whether the government could subject the alien petitioner in that case to prolonged detention without providing an individualized bond hearing.   The Third Circuit first determined that the alien—who had a reinstated removal order and was detained pending his pursuit of withholding-only relief from removal—was subject to detention pursuant to § 1231(a)(6).[18]   *Id.* at 213–19.   Having located the

---

[17] The dissent's reliance on *Nunez-Reyes v. Holder*, 646 F.3d 684, 690 (9th Cir. 2011) (en banc) misses the mark.  For one, *Nunez-Reyes* involved our court sitting en banc, not a three-judge panel determining whether an earlier circuit precedent was clearly irreconcilable with the decision of an intervening authority.  We are faced with different constraints compared with our court sitting en banc.  Second, unlike in *Nunez-Reyes*, there is no single "rule" on which *Diouf II* relied that would warrant a conclusion that *Jennings*'s rejection of any aspect of *Casas-Castrillon* necessarily would invalidate *Diouf II* in its entirety.

[18] We recognize that there is a circuit split on the issue of whether an alien subject to a reinstated removal order who pursues withholding-only relief is subject to detention pursuant to § 1226(a) or § 1231(a)(6).  Both our court and the Third Circuit treat such detention as authorized pursuant to § 1231(a)(6).  *Guerrero-Sanchez*, 905 F.3d at 213–19; *Padilla-Ramirez*, 882 F.3d at 830–32.  In contrast, the Second and Fourth

government's detention authority in § 1231(a)(6), the Third Circuit considered whether the petitioner was entitled to a bond hearing at all. *Id*. at 219. To resolve that issue, the Third Circuit considered, in relevant part, *Zadvydas*, *Jennings*, and *Diouf II*.

Rejecting the government's argument there that "*Zadvyda*s resolves the only ambiguity in the text of § 1231(a)(6)," *id.* at 220, the Third Circuit reasoned that *Zadvydas* did "not explicitly preclude courts from construing § 1231(a)(6) to include additional *procedural* protections during the statutorily authorized detention period, should those protections be necessary to avoid detention that could raise different constitutional concerns," *id*. at 221 (emphasis in original). Finding that the petitioner's 637-day detention without bond raised serious constitutional concerns, *id*., the Third Circuit declined to address whether the petitioner's continued confinement violated the Due Process Clause. *Id.* at 221, 223. Instead, the court asked whether the canon of constitutional avoidance might sustain a reading of § 1231(a)(6) that would require the provision of a bond hearing. *Id.* at 223.

The Third Circuit acknowledged *Jennings*'s discussion regarding the proper invocation of the canon and *Jennings*'s holding that the canon could not be applied to "other provisions in the INA" that use the phrase "shall detain." *Id.* ("We . . . invoke the canon of constitutional avoidance so long as 'the statute is found to be susceptible of more than one construction.' (quoting *Jennings*, 138 S. Ct. at 842)). Turning to § 1231(a)(6)'s text and alluding to *Zadvydas*, the

Circuits treat such detention as authorized pursuant to § 1226(a). *Guzman Chavez v. Hott*, 940 F.3d 867, 880–82 (4th Cir. 2019); *Guerra v. Shanahan*, 831 F.3d 59, 64 (2d Cir. 2016).

Third Circuit noted that the statute's use of the phrase "may be detained" "invites us to apply the canon of constitutional avoidance[.]" *Id*. at 223–24. "In order to avoid determining whether the petitioner's detention violates the Due Process Clause," the Third Circuit expressly "adopt[ed] the Ninth Circuit's limiting construction of § 1231(a)(6) that 'an alien facing prolonged detention under [that provision] is entitled to a bond hearing before an immigration judge and is entitled to be released from detention unless the government establishes that the alien poses a risk of flight or a danger to the community.'" *Id*. at 224 (quoting *Diouf II*, 634 F.3d at 1092). The Third Circuit also adopted our clear and convincing evidence standard set forth in *Singh*. *Id.* at n.12 ("The Government must meet its burden in such bond hearings by clear and convincing evidence. (citing *Singh*, 638 F.3d at 1203–04)). The Third Circuit's express and reasoned adoption of *Diouf II* even after *Jennings* shows that we do not break new ground in concluding that *Diouf II* is not clearly irreconcilable with *Jennings*.

Ignoring *Guerrero-Sanchez*, the Government quotes from the Sixth Circuit's decision in *Hamama v. Homan*, 912 F.3d 869 (6th Cir. 2018), without any argument about how that case should affect our clear irreconcilability analysis here. To the extent the Government intended to argue that *Hamama* should change our analysis, we reject that argument.

In *Hamama*, the Sixth Circuit vacated a district court's class-wide preliminary injunction concerning §§ 1226(c) and 1231(a)(6) detention claims, pursuant to which the government was required to provide class members with individualized bond hearings. *Id*. at 873–74. With respect to those claims, the Sixth Circuit determined that 8 U.S.C. § 1252(f)(1), a statute that prohibits federal courts other than

the Supreme Court from enjoining the operation of §§ 1221–31 except with respect to an individual alien, barred jurisdiction over class-wide injunctive relief there. *Id.* at 877. In rejecting the petitioners' argument that they sought injunctive relief pursuant to a statutory construction of the relevant detention statutes, the Sixth Circuit determined that "*Jennings* foreclosed any statutory interpretation that would lead to what Petitioners want." *Id.* at 879. In the Sixth Circuit's view, "the district court . . . created out of thin air a requirement for bond hearings that does not exist in the statute; and adopted new standards that the government must meet at the bond hearings." *Id.* at 879–80.

*Hamama* does not compel a different conclusion about whether *Diouf II* is clearly irreconcilable with *Jennings* for two reasons. First, despite remarking that "the *Jennings* Court chastised the Ninth Circuit for 'erroneously conclud[ing] that periodic bond hearings are required under the immigration provisions *at issue here*," the Sixth Circuit extended *Jennings* to § 1231 without any analysis regarding whether *Jennings*'s reasoning fairly applies to that provision. *Id.* at 879 (quoting *Jennings*, 138 S. Ct. at 850) (emphasis added). Although we do not question *Hamama*'s determination insofar as it concerns the provisions actually at issue in *Jennings*, we cannot agree with the uncritical extension of *Jennings* to § 1231(a)(6), particularly given our foregoing analysis of *Jennings*. Second, unlike *Guerrero-Sanchez*, *Hamama* neither acknowledged, nor grappled with our decision in *Diouf II*. Therefore, we do not find *Hamama* to have any persuasive value here in determining whether we remain bound by *Diouf II* even after *Jennings*.

The dissent takes issue with our reliance on *Guerrero-Sanchez*. Dissent at 63–64 & n.5. Yet, in so doing, the dissent errs by mistaking the clear irreconcilability inquiry

that confronts us with an invitation to opine on how we would decide the statutory construction question that *Diouf II* resolved.[19] To be clear, our reliance on *Guerrero-Sanchez* concerns whether we may apply *Diouf II* even after *Jennings*. In determining whether a prior circuit precedent is clearly irreconcilable with an intervening authority's decision, we have looked to how other circuits have addressed the issue in light of the intervening decision. *See Murray*, 934 F.3d at 1107 (observing that the court's clear irreconcilability conclusion "comport[ed] with the decisions of all of our sister circuits that have considered this question after" the Supreme Court's *Gross* and *Nassar* decisions); *In re Zappos.com, Inc.*, 888 F.3d 1020, 1026 n.6 (9th Cir. 2018) (noting that the panel's conclusion that earlier circuit precedent was not clearly irreconcilable with an intervening Supreme Court decision was "consistent" with sister circuit decisions to have considered the issue). *Guerrero-Sanchez* is the only reasoned decision of another circuit addressing the relationship between *Diouf II*'s construction of § 1231(a)(6) and *Jennings*, and it determined that *Jennings* does not undercut *Diouf II*'s construction. We therefore respectfully disagree with the dissent.

---

[19] The dissent asserts that we and *Guerrero-Sanchez* "mistakenly perceive[] the narrow ambiguity in § 1231(a)(6) identified by *Zadvydas*" to justify *Diouf II*'s construction of § 1231(a)(6). Dissent 63–64. We have already explained that the dissent's characterization of the ambiguity that *Zadvydas* identified is not justified by *Jennings* or *Zadvydas*. We otherwise note that the dissent's view contravenes how at least one other circuit understood *Zadvydas* prior to *Jennings*. *See Hernandez-Carrera v. Carlson*, 547 F.3d 1237, 1249 (10th Cir. 2008) ("In *Zadvydas*, the Supreme Court did not purport to 'resolve' the statutory ambiguity in § 1231(a)(6) once and for all. . . . In no way, . . . did the Court signal that its interpretation was the only reasonable construction of § 1231(a)(6).").

## E. The Outcome of the Clearly Irreconcilable Analysis

We have carefully considered *Jennings*, *Diouf II*, and the parties' arguments as well as the dissent's views. As we have explained, there is some tension between *Diouf II* and *Jennings*. But, as members of a three-judge panel, we are not free to overrule the prior decision of a three-judge panel merely because we sense some tension with that decision and the decision of an intervening higher authority even if we might have reached a different outcome than the prior decision in light of that intervening authority. *Consumer Def.*, 926 F.3d at 1213 ("[M]ere tension between the cases does not meet the higher standard of irreconcilable conflict."). Taken together, *Jennings*'s limited focus on the provisions at issue in that case and *Jennings*'s analysis and reasoning concerning those provisions compel us to conclude that we remain bound by *Diouf II*'s construction of § 1231(a)(6). Neither the Government's arguments, nor the dissent have persuaded us otherwise. Accordingly, we conclude that the district court properly determined that Plaintiffs are likely to succeed on the merits of their § 1231(a)(6) statutory claims.

## III. The Preliminary Injunction Is Not Otherwise Contrary to Law

Although we have concluded that Plaintiffs are likely to succeed on the merits of their statutory claims, the Government contends that we must vacate the preliminary injunction because of two other asserted legal errors. We disagree because we find no such errors.

First, the Government argues that *Zadvydas* already applied the canon to § 1231(a)(6) to prohibit indefinite definition, pursuant to which *Zadvydas* specified a particular

means by which an alien can challenge detention in a habeas petition. The Government contends that the district court could not re-apply the canon to § 1231(a)(6). The Government, however, cannot properly charge the district court with erroneously "re-applying" the canon of constitutional avoidance to § 1231(a)(6). Indeed, the Government acknowledges that the district court merely followed *Diouf II*'s construction of § 1231(a)(6).

The Government's true complaint is with *Diouf II* itself. As in *Diouf II*, the Government argues here that § 1231(a)(6)'s text cannot be interpreted to require a bond hearing for aliens detained under the provision. *Diouf II*, 634 F.3d at 1089. And, as in *Diouf II*, the Government argues that its post-*Zadvydas* regulations adequately address any constitutional concerns that may arise from an alien's continued detention pursuant to § 1231(a)(6). *Diouf II*, 634 F.3d at 1089–92. The Government's attempt to relitigate issues that *Diouf II* decided necessarily fails because we have concluded that *Diouf II* remains controlling precedent. Although the Government may disagree with *Diouf II*'s wisdom, that disagreement does not give us license to disregard *Diouf II*.

Second, the Government argues that *Clark v. Martinez*, 543 U.S. 371 (2005), stands for the proposition that courts can apply *only Zadvydas*'s construction of § 1231(a)(6) in all cases, and nothing more. Based on this reading of *Clark*, the Government contends that the district court's preliminary injunction erroneously departs from the framework *Zadvydas* established for federal habeas courts.

Contrary to the Government's argument, *Clark* did not announce a new rule of the canon of constitutional avoidance, nor does *Clark* stand for the proposition that *Zadvydas*'s construction of § 1231(a)(6) is the single

permissible application of the canon to that provision. Instead, in *Clark*, the Court held that *Zadvydas*'s construction of § 1231(a)(6) "must" apply to all three categories because "[t]he operative language of § 1231(a)(6) . . . applies without differentiation to all three categories of aliens that are its subject." *Clark*, 543 U.S. at 378. *Clark* thus requires applying § 1231(a)(6), including as judicially construed, in the same manner for all categories of aliens specified in the statute "without differentiation." *Id.* at 378–79.[20]

Expressly acknowledging *Clark*, *Diouf II* requires the Government to provide a bond hearing to any alien detained under § 1231(a)(6) whose detention becomes prolonged and whose release or removal is not imminent, *Diouf II*, 634 F.3d at 1088 (citing *Clark*, 543 U.S. at 380–81); *id.* at 1084. Consistent with *Clark* and *Diouf II*, the preliminary injunction applies to the entire certified class of aliens that our court treats as detained pursuant to § 1231(a)(6).[21] *See Padilla-Ramirez*, 882 F.3d at 830–32. Thus, we reject the Government's remaining challenges to the preliminary injunction.

---

[20] In *Clark*, the Court rejected the dissent's contrary view that the government's § 1231(a)(6) detention authority applies differently across categories of aliens as a "novel interpretative approach" that "would render every statute a chameleon, its meaning subject to change depending on the presence or absence of constitutional concerns in each individual case." 543 U.S. at 382. This aspect of *Clark* does not support the Government's position.

[21] The certified class includes aliens with administratively final removal orders under 8 U.S.C. § 1228(b). The Government does not argue that such aliens are not subject to detention pursuant to § 1231(a), and thus has waived any such argument in this appeal. We therefore assume that such aliens may be detained pursuant to § 1231(a)(6).

## CONCLUSION

We conclude that the district court correctly determined that Plaintiffs are likely to succeed on their § 1231(a)(6) statutory claims. Thus, we affirm the district court's grant of a preliminary injunction.

**AFFIRMED.**

---

FERNANDEZ, Circuit Judge, dissenting:

I agree with the majority that Plaintiffs' likelihood of success on their statutory claim turns on whether *Diouf v. Napolitano* (*Diouf II*), 634 F.3d 1081, 1085–86 (9th Cir. 2011), remains binding law in our circuit. I also agree that we must follow *Diouf II* unless a subsequent Supreme Court case has "undercut [its] theory or reasoning . . . in such a way that the cases are clearly irreconcilable." *Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003) (en banc). And I agree that "'is a high standard'" to meet. *Close v. Sotheby's, Inc.*, 894 F.3d 1061, 1073 (9th Cir. 2018). That standard is met here because *Diouf II*'s reasoning is clearly irreconcilable with *Jennings v. Rodriguez*, __ U.S. __, __, 138 S. Ct. 830, 851, 200 L. Ed. 2d 122 (2018). Therefore, I respectfully dissent.

As an intermediate appellate court, one goal of our jurisprudence is "to preserve the consistency of circuit law." *Miller*, 335 F.3d at 900. But this laudable objective "must not be pursued at the expense of creating an inconsistency between our circuit decisions and the reasoning" of the Supreme Court. *Id.* Deciding whether *Jennings* and *Diouf II* are irreconcilable is not merely a matter of deciding whether their ultimate holdings might coexist in the abstract.

*See United States v. Lindsey*, 634 F.3d 541, 550 (9th Cir. 2011); *see also Ortega-Mendez v. Gonzales*, 450 F.3d 1010, 1019 (9th Cir. 2006). Instead, the question is whether the Supreme Court has so "undercut the theory or reasoning" of *Diouf II* "that the cases are [now] clearly irreconcilable." *Miller*, 335 F.3d at 900; *see also Ne. Ohio Coal. for the Homeless v. Husted*, 831 F.3d 686, 720–21 (6th Cir. 2016). That inquiry "requires us to look at more than [the Court's] surface conclusions," and to examine whether the Court's "'approach . . . [is] fundamentally inconsistent with'" our earlier reasoning. *Rodriguez v. AT & T Mobility Servs. LLC*, 728 F.3d 975, 979 (9th Cir. 2013). That includes the Court's "'mode of analysis.'" *Miller*, 335 F.3d at 900. If "the conclusion reached in our circuit precedent [can] no longer [be] 'supported for the reasons stated' in that decision," the circuit precedent must yield. *Rodriguez*, 728 F.3d at 979; *see also Ortega-Mendez*, 450 F.3d at 1020. We have frequently applied that principle and deviated from our prior holdings. *See, e.g.*, *Murray v. Mayo Clinic*, 934 F.3d 1101, 1105 (9th Cir. 2019), *petition for cert. filed*, 88 U.S.L.W. 3265 (U.S. Feb. 3, 2020) (No. 19-995); *Rodriguez*, 728 F.3d at 981; *United States ex rel. Air Control Techs., Inc. v. Pre Con Indus., Inc.*, 720 F.3d 1174, 1177–78 (9th Cir. 2013); *Lindsey*, 634 F.3d at 549–50; *Ortega-Mendez*, 450 F.3d at 1018–20; *Galbraith v. County of Santa Clara*, 307 F.3d 1119, 1123–25 (9th Cir. 2002).

A close examination of *Diouf II* and *Jennings* reveals that the reasoning supporting *Diouf II*'s conclusion that 8 U.S.C. § 1231(a)(6) requires aliens be afforded individualized bond hearings after six months of detention is no longer viable. In *Diouf II*, we held "that an individual facing prolonged immigration detention under 8 U.S.C. § 1231(a)(6) is entitled to release on bond unless the government establishes that he is a flight risk or a danger to

the community." *Diouf II*, 634 F.3d at 1082. We extended procedural protections that we had previously granted to aliens facing prolonged detention under 8 U.S.C. § 1226(a)[1] to those detained under § 1231(a)(6), because otherwise their "prolonged detention . . . would raise 'serious constitutional concerns.'" *Diouf II*, 634 F.3d at 1086. We thus "appl[ied] the canon of constitutional avoidance and construe[d] § 1231(a)(6) as requiring an individualized bond hearing, before an immigration judge, for aliens facing prolonged detention." *Id. Jennings* is clearly irreconcilable with *Diouf II*'s reasoning, both with regard to our application of the canon of constitutional avoidance and our reliance on *Casas-Castrillon*.[2]

---

[1] *Casas-Castrillon v. Dep't of Homeland Sec.*, 535 F.3d 942, 949–51 (9th Cir. 2008).

[2] The majority mentions several times that *Jennings*, __ U.S. at __, 138 S. Ct. at 836, 842, 843–44, 850–51, expressly limited its holding to the statutory provisions that were before it (i.e., 8 U.S.C. §§ 1225(b), 1226(a), (c)). But that does "not deprive it of all persuasive force." *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 351, 133 S. Ct. 2517, 2527, 186 L. Ed. 2d 503 (2013). Thus, to the extent that the majority relies upon that limitation to justify its reconciling of *Jennings*, __ U.S. at __, 138 S. Ct. at 851, and *Diouf II*, 634 F.3d at 1086, I disagree. As we have said, "the issues decided by the higher court need not be identical in order to be controlling." *Miller*, 335 F.3d at 900; *see also Gahagan v. USCIS*, 911 F.3d 298, 302 (5th Cir. 2018) ("That two decisions involve different statutes is not dispositive."). For example, in *Murray*, 934 F.3d at 1105–07, we determined that the reasoning of one of our earlier circuit cases, *Head v. Glacier Nw. Inc.*, 413 F.3d 1053, 1063–65 (9th Cir. 2005), was clearly irreconcilable with subsequent Supreme Court cases. Neither of those Supreme Court cases addressed the particular statutory provision that was before us in either *Murray* or *Head*. *Murray*, 934 F.3d at 1105–07; *see also Nassar*, 570 U.S. at 351–53, 133 S. Ct. at 2528; *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 173–75, 129 S. Ct. 2343, 2348–49, 174 L. Ed. 2d 119 (2009). Nevertheless,

*Jennings* establishes that we misused the canon of constitutional avoidance in *Diouf II*. In *Jennings*, the Supreme Court explained that the canon should be employed only "'after the application of ordinary textual analysis,'" when "'the statute is found to be susceptible of more than one construction.'" *Jennings*, __ U.S. at __, 138 S. Ct. at 842; *see also Clark v. Martinez*, 543 U.S. 371, 385, 125 S. Ct. 716, 726, 160 L. Ed. 2d 734 (2005). *Diouf II* engaged in no textual analysis of § 1231(a)(6): we did not identify a textual ambiguity in the statute regarding a bond hearing requirement, nor did we identify any plausible basis in the statutory text for such a hearing. *See Diouf II*, 634 F.3d at 1089; *see also Clark*, 543 U.S. at 379, 381, 125 S. Ct. at 723, 724. *Diouf II*'s application of the constitutional avoidance canon without first analyzing the text of the statute or identifying a relevant ambiguity is clearly irreconcilable with *Jennings*. Instead of properly applying the canon of constitutional avoidance to § 1231(a)(6), *Diouf II* simply grafted *Casas-Castrillon*'s reasoning as to § 1226(a) detainees onto § 1231(a)(6) detainees. *Diouf II*, 634 F.3d at 1089. We did not explain why that was appropriate, notwithstanding our recognition that the text of § 1226(a) expressly mentions bond, while the text of § 1231(a)(6) does not. *See id.*; *cf. Nassar*, 570 U.S. at 352, 133 S. Ct. at 2528 (applying the same analysis when there is no "meaningful textual difference" between the two statutes at issue). That approach in *Diouf II* is irreconcilable with *Jennings*.

---

we adopted the Supreme Court's reasoning because there was "no meaningful textual difference" between the statutes in the circumstances at issue there. *Murray*, 934 F.3d at 1106 n.6; *see also id.* at 1106. The same is true here. Thus, that *Jennings* and *Diouf II* analyzed different statutes is not dispositive of their irreconcilability.

The majority seeks support in the Third Circuit's decision that *Diouf II*'s reasoning remains sound because "[t]he Supreme Court has already determined [in *Zadvydas*[3]] that the text of § 1231(a)(6) is ambiguous as to the due process protections that it provides," and that § 1231(a)(6) could therefore be construed to require bond hearings. *Guerrero-Sanchez v. Warden York Cty. Prison*, 905 F.3d 208, 223–24 (3d Cir. 2018). However, like *Diouf II* and the majority, the Third Circuit mistakenly perceived the narrow ambiguity in § 1231(a)(6) identified by *Zadvydas*, in the particular context presented there, as essentially equivalent to a general determination that § 1231(a)(6) is "ambiguous as to . . . due process" overall. *Guerrero-Sanchez*, 905 F.3d at 223.[4] Our adopting the Third Circuit's approach would effectively allow courts to decide constitutional issues sub silentio, without ever having to "find[] a statute unconstitutional as applied." *Clark*, 543 U.S. at 384, 125 S. Ct. at 726. Instead, we should follow the procedure described by *Jennings*: a court must identify "'competing *plausible* interpretations of [the] statutory text,'" in the specific context of the matter at hand, before applying the canon of constitutional avoidance. *See Jennings*, __ U.S.

---

[3] *Zadvydas v. Davis*, 533 U.S. 678, 697, 121 S. Ct. 2491, 2502, 150 L. Ed. 2d 653 (2001) ("the word 'may' is ambiguous").

[4] By the way, it seems to me that the Third Circuit, and we, have given short shrift to the fact that the Court's opinion in *Zadvydas* was largely motivated by the fact that the possibility of removal of the aliens before it was truly remote because the countries to which they could be removed were highly unlikely to accept them at any time in the foreseeable future. Thus, detention was indefinite and potentially permanent. *See Zadvydas*, 533 U.S. at 684–86, 690–91, 695–96, 121 S. Ct. at 2496–97, 2498–99, 2502. Even so, the Court has dubbed the decision in *Zadvydas* "notably generous." *Jennings*, __ U.S. at __, 138 S. Ct. at 843; *see also id.* at __, 138 S. Ct. at 843–44 (the Court did not expand that form of generosity).

at __, 138 S. Ct. at 843; *Clark*, 543 U.S. at 379, 125 S. Ct. at 723.  Here, that would require us to identify an ambiguity in the text of § 1231(a)(6) that produces a plausible reading of the statute as requiring bond hearings.  None is apparent to me.[5]

The majority decides that *Diouf II* conformed with *Jennings* in interpreting the text of § 1231(a)(6) because it noted that prior circuit precedent[6] and agency regulations[7] had recognized the requirement of a bond as a reasonable condition[8] of supervised release pursuant to the statute.  *See Diouf II*, 634 F.3d at 1089.  But I fail to see how that reasoning or line of authority supplies the necessary plausible interpretation of the text of § 1231(a)(6) as *requiring* a bond hearing.  Those authorities arose out of Congress's explicit command to the Attorney General to prescribe regulations governing the terms of an alien's supervised release after his initial 90-day detention. 8 U.S.C. § 1231(a)(3).  The Department of Homeland

---

[5] For example, the Court's determination in *Zadvydas*, 533 U.S. at 697, 121 S. Ct. at 2502, that § 1231(a)(6) was ambiguous as to whether the agency had discretion to indefinitely detain aliens does not support the independent conclusion that § 1231(a)(6) is also ambiguous as to whether the agency must afford those aliens individualized bond hearings before an Immigration Judge when they have been detained for six months.  *See Jennings*, __ U.S. at __, 138 S. Ct. at 847–48 (explaining that logic in the context of § 1226(a)); *cf. Diouf II*, 634 F.3d at 1086, 1091–92, 1092 n.13.

[6] *Diouf v. Mukasey* (*Diouf I*), 542 F.3d 1222, 1234 (9th Cir. 2008); *see also Doan v. INS*, 311 F.3d 1160, 1162 (9th Cir. 2002).

[7] 8 C.F.R. § 241.5(a)–(b).

[8] 8 U.S.C. § 1231(a)(3).

Security[9] dutifully promulgated pertinent regulations, and one of the release conditions it adopted was that an alien may be required to post a bond in order to ensure his compliance with the terms of his supervision order. 8 C.F.R. § 241.5(b); *see also Doan*, 311 F.3d at 1162.  But the agency's proper exercise of its discretion[10] to impose bond as a condition of release pursuant to § 1231(a)(3), combined with our decision that § 1231(a)(6) allows the agency to do so,[11] does not produce the conclusion that § 1231(a)(6) plausibly *requires*, as a matter of statutory construction, the bond hearings sought by the Plaintiffs.  *See Morales-Izquierdo*, 486 F.3d at 493.[12]  As I have previously noted, neither a bond nor a hearing is mentioned in the text of § 1231(a)(6).[13]  Because our court has yet to identify a plausible interpretation of the text of § 1231(a)(6) that would require a bond hearing, I disagree with the majority's conclusion that *Diouf II* applied

---

[9] *See City & County of San Francisco v. USCIS*, 944 F.3d 773, 781 n.2 (9th Cir. 2019).

[10] *See Morales-Izquierdo v. Gonzales*, 486 F.3d 484, 492 (9th Cir. 2007) (en banc).

[11] *Doan*, 311 F.3d at 1161–62.

[12] And because *Diouf I*, 542 F.3d at 1234, and *Doan*, 311 F.3d at 1162, simply recognized the agency's authority to impose bond as a condition of release, I see no ineluctable reason that those cases would have to be overturned if we overturned *Diouf II*, 634 F.3d at 1086, 1089.

[13] I do not mean to suggest that the statute forbids the agency from promulgating regulations that would allow bond hearings before an Immigration Judge.  *See Encino Motorcars, LLC v. Navarro*, __ U.S. __, __, 136 S. Ct. 2117, 2124–25, 195 L. Ed. 2d 382 (2016); *see also Morales-Izquierdo*, 486 F.3d at 493.  But that does not make it any less problematic for a *court* to "simply read a bond hearing requirement into the statute."  *See Rodriguez v. Robbins*, 715 F.3d 1127, 1143 (9th Cir. 2013) (characterizing the *Diouf* line of cases).

the canon of constitutional avoidance to choose between competing plausible interpretations of § 1231(a)(6), as required by *Jennings*. Rather, its reasoning is irreconcilable with *Jennings*.

*Diouf II*'s holding was also premised on its implicit assumption that the language of § 1226(a) and § 1231(a)(6) was sufficiently similar that *Casas-Castrillon*'s analysis of § 1226(a) could be grafted onto § 1231(a)(6). *Diouf II*, 634 F.3d at 1086, 1089; *see also, e.g.*, *Murray*, 934 F.3d at 1106 & n.6. *Diouf II*'s reasoning in this regard has likewise been fatally undermined because that aspect of *Casas-Castrillon* is itself clearly irreconcilable with *Jennings*.

In *Casas-Castrillon*, we held "that the government may not detain a legal permanent resident . . . for a prolonged period [pursuant to 8 U.S.C. § 1226(a)] without providing him a neutral forum in which to contest the necessity of his continued detention." *Casas-Castrillon*, 535 F.3d at 949. Our holding was premised on our conclusion "that prolonged detention without adequate procedural protections would raise serious constitutional concerns." *Id.* at 950. But we did not decide the constitutional issue in *Casas-Castrillon*. *Id.* Rather, we pointed out that § 1226(a) "provides . . . authority for the Attorney General to conduct a bond hearing and release the alien on bond or detain him if necessary to secure his presence at removal." *Id.* at 951; *see also* 8 U.S.C. § 1226(a)(2) (an alien "may [be] release[d]" on bond or parole). We then held that "[b]ecause the prolonged detention of an alien without an individualized determination of his dangerousness or flight risk would be 'constitutionally doubtful,' . . . § 1226(a) must be construed as *requiring* the Attorney General to provide the alien with such a hearing." *Casas-Castrillon*, 535 F.3d at 951. But we

identified no ambiguity in § 1226(a) regarding whether a bond hearing was required. *Id.* at 950–51. Instead, we essentially rewrote the statute to make it so. *Id.* That is precisely the procedure rejected by the Supreme Court in *Jennings*. *See Jennings*, __ U.S. at __, 138 S. Ct. at 843; *see also Clark*, 543 U.S. at 378, 125 S. Ct. at 722–23; *id.* at 381, 125 S. Ct. at 724.

In *Jennings*, the Supreme Court rejected as implausible our reading of § 1226(a) "to limit the permissible length of an alien's detention without a bond hearing." *Jennings*, __ U.S. at __, 138 S. Ct. at 842. The Supreme Court held "that there is no justification for any of the procedural requirements that the Court of Appeals layered onto § 1226(a) without any arguable statutory foundation." *Id.* Nonetheless, the Supreme Court acknowledged that aliens detained pursuant to § 1226(a) were entitled, by dint of agency regulations, to "bond hearings at the outset of detention." *Id.* at __, 138 S. Ct. at 847. The Supreme Court thus struck down the additional procedural devices we had created, which went "well beyond the initial bond hearing established by existing regulations—namely, periodic bond hearings every six months in which the Attorney General must prove by clear and convincing evidence that the alien's continued detention is necessary." *Id.* at __, 138 S. Ct. at 847–48. The scaffolding upon which we had erected those excess procedures for § 1226(a) detainees was *Casas-Castrillon* and its progeny. *See Rodriguez v. Robbins*, 804 F.3d 1060, 1084–85, 1086–89 (9th Cir. 2015) ("The district court's decision regarding the § 1226(a) subclass was squarely controlled by our precedents," most prominently, *Casas-Castrillon*), *rev'd*, *Jennings*, __ U.S. at __, 138 S. Ct. at 836. Because *Jennings* struck down all procedural protections for § 1226(a) detainees beyond those provided by regulation, *Jennings* dispelled the excess

procedures conjured up by *Casas-Castrillon*, 535 F.3d at 950–51.**[14]** Thus, *Diouf II*'s reasoning that § 1231(a)(6) detainees were entitled to individualized bond hearings simply because *Casas-Castrillon* had conjured those for § 1226(a) detainees is clearly irreconcilable with *Jennings*.

*Diouf II* contains no other reasoning supporting its conclusion that an individualized bond hearing is required for § 1231(a)(6) detainees. *See Diouf II*, 634 F.3d at 1086, 1089. In light of the analysis above, the majority contradicts *Jennings* by relying on *Diouf II*. *See Close*, 894 F.3d at 1073; *cf. Nunez-Reyes v. Holder*, 646 F.3d 684, 690 (9th Cir. 2011) (en banc) (overruling one case likewise overrules the holdings of those cases that followed its rule). In other words, there is no basis for clinging to a mode of analysis that the Court has plainly held is plainly wrong. Rather, we should vacate the grant of the preliminary injunction.

Thus, I respectfully dissent.

---

**[14]** The majority suggests that some of *Casas-Castrillon* survives *Jennings*: that is, the majority reads *Jennings* to invalidate only the requirement that a hearing be conducted after six months of detention, which it sees as narrower than *Casas-Castrillon*'s holding, which required an individualized bond hearing after an alien's "prolonged detention." *See Casas-Castrillon*, 535 F.3d at 951. But I take the Supreme Court at its word, and it told us in *Jennings* that we had erred in providing § 1226(a) detainees with "procedural protections that go . . . beyond [those] . . . established by existing regulations." *Jennings*, __ U.S. at __, 138 S. Ct. at 847. Because the hearings prescribed in *Casas-Castrillon* are procedural protections that are not "established by existing regulations," I disagree with the majority that *Casas-Castrillon*'s hearing requirement survived *Jennings*.